Argued December 13, 1956, affirmed February 27, 1957

# BERNASKI *v.* LIUDAHL

307 P. 2d 510

*James Arthur Powers* and *Earle P. Skow,* Portland, argued the cause and filed a brief for appellant.

*Frank E. Day* argued the cause for respondent. On the brief were Stern, Reiter & Day and Roger G. Tilbury, Portland.

Before Tooze*, Acting Chief Justice, and Rossman, Perry** and McAllister, Justices.

ROSSMAN, J.

This is an appeal by Oscar A. Liudahl, one of the two defendants, from an order of the circuit court which vacated a judgment, based upon a verdict, which had been entered in favor of both defendants and granted a new trial as to Liudahl. The challenged order was in response to a motion for a new trial made by the plaintiff, Pauline Bernaski. The action which terminated in the manner just mentioned was instituted by Mrs. Bernaski to recover damages which she sustained, so her complaint alleged, when a car driven by Liudahl ran into a bus of the defendant, Portland Traction Company, in which she was riding. The jury's verdict was in favor of both defendants. The motion for a new trial sought the vacation of the judgment as to each of the defendants, but it was sustained as to defendant Liudahl only. We will hereafter refer to him as the defendant.

The collision occurred February 18, 1951, at 3:45 p. m. in the intersection of Northeast Union avenue and Dekum street, Portland. The course of the former is north and south; of the latter east and west. The defendant was driving his car north on Union. The bus was proceeding east on Dekum. The Liudahl car

* Deceased December 21, 1956.
** Chief Justice when this decision was announced.

struck the bus a short space back of its right-hand door. The bus had proceeded approximately half way across the intersection when it was struck. The plaintiff claims that the impact caused her to sustain injury. Her complaint sought $100,000 general damages and $1,572.70 special damages.

The part of the motion for a new trial which pertained to the defendant stated the following as among the grounds upon which it was based:

> "The court instructed the jury that the evidence showed Defendant Liudahl to have been negligent as a matter of law but the effect of this was negatived by the court later instructing the jury that they must find the Defendant Liudahl guilty of negligence by a preponderance of the satisfactory evidence and therefore left the jury with the issue of Defendant Liudahl's negligence when such issue did not as a matter of fact exist."

One of the specifications of the charge of negligence which the complaint made against the defendant follows:

> "That said defendant failed and neglected to bring his said vehicle to a stop at the intersection of N. E. Dekum Street, in obedience to the red, or Stop signal then and there showing and then and there controlling the movement of defendant's said vehicle. But, on the contrary, said defendant proceeded into the said intersection in disregard to said Stop signal."

Traffic on Union avenue is controlled by electrical stop-and-go lights which also regulate the movement of cars which cross or enter Union from intersecting streets such as Dekum. The long series of lights is operated in such a manner that a motorist, who takes note of the speed for which they are set, may travel the length of the thoroughfare without stopping. February

18, 1951, the defendant entered Union at or about its south extremity and proceeded north on his way to Vancouver. He maintained the requisite speed until he approached Dekum and, therefore, had not been required by the recurring traffic lights to stop.

When the defendant was 400 feet from Dekum he noticed the traffic lights in the intersection and observed that a green light faced him. In the intersection of Union and Dekum five traffic lights control the movement of cars. One of them, which the defendant did not notice, overhangs the intersection and is located above the traffic near the center of the intersection. When it displays a green light to the south, a light of like color appears upon its other side for traffic coming from the north. Simultaneously with the green light favoring traffic moving north and south, red lights greet traffic approaching the intersection from the east and west. The lights upon the overhanging mechanism do not change directly from red to green and vice versa, but the change of color is interrupted for two seconds by an amber light which gives warning to motorists approaching the intersection that the lights are about to change.

Each of the four corners of the intersection is equipped with a traffic regulating light. These lights are of the familiar kind and stand upon posts. Their operation is synchronized with the central overhanging light, but they have no amber color. When the overhanging light displays amber, the four corner lights change to red. All four remain red for two seconds and when the overhanging light flashes green the two corresponding corner lights change to the same color.

As the defendant approached the intersection he failed to observe the central overhanging light but noticed the light which stood at the southeast corner

of the intersection. It displayed a green light. When he was about 400 feet from the intersection a car which entered Union from a side street immediately ahead of him diverted his attention from the traffic lights. The movement of that car caused him to slow his speed to about 22 miles per hour. As the defendant drew nearer the intersection he saw the bus with which he shortly collided. When he was within ten feet of Dekum he became aware of the fact that the light at the southeast corner was red and that the bus was moving into the intersection. He had not noticed the light overhead. His testimony indicates that the corner light may have changed from green to red when he was farther than ten feet from the intersection.

Witnesses, whose testimony is not challenged, testified that the bus had stopped at the southwest corner and had received a passenger. According to the defendant, the bus started into the intersection before the light facing it turned green. Others testified that the bus did not resume operation until the light had changed from red to green. When the bus had crossed half the width of the pavement, the Liudahl car, which had not stopped for the red light, ran into it.

We now quote from the defendant's testimony:

"Q Now, at the time that you first saw the bus when you were at a point thirty feet from the intersection, you had not yet observed that the signal was red; is that correct?

"A That is correct.

"Q And you traveled approximately 20 feet then prior to ascertaining that the signal governing your travel on Union Avenue was red; is that correct?

"A That is correct.

"Q And this traffic control signal governing your travel on Northeast Union Avenue at the

time you entered the cross-walk and at the time you entered the intersection was red; is that correct?

"A  It was red.

\*    \*    \*    \*    \*

"Q  And where was your car located with relation to the south curbline of Union Street—or of Dekum Street when the lights turned red?  You understand the question, Mr. Liudahl?

"A  I would say I was within ten feet, approximate.

"Q  And at that time did you keep your eyes on the bus constantly during that approach?

"A  No, not constantly.

"Q  Did you observe where the bus was at that time?

"A  No, I don't believe I did.  I have no recollection of that.

"Q  What did you do when you noticed the lights turn red?

"A  Put on my brakes."

The application of the brakes failed to stop the defendant's car and it crashed into the bus.  The pavement was wet, but no skid marks were visible upon it.  The defendant, as will be noticed, conceded that he turned his attention away from the bus notwithstanding the fact that he had observed it start into the intersection.  No one claims that it moved at an excessive rate of speed.  If we correctly interpret the testimony, the bus had moved more than 30 feet in the intersection when the impact occurred and the defendant had proceeded at least 18 feet from the place where he first saw the red light.

ORS 483.128 says:

"No driver of any vehicle or motorman of any streetcar shall disobey the instructions of any of-

ficial traffic sign or signal placed in accordance with the provisions of this chapter, unless otherwise directed by a police officer.''

ORS 483.130(3) provides:

''Red alone or 'Stop.' Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at an intersection or at such other point as may be designated by the proper traffic authority. Except as provided in ORS 483.132, such traffic shall remain standing until green or 'Go' is shown alone. * * *''

■ It is, of course, well established that the violation of a statute which imposes a duty for the protection of the safety of others is negligence as a matter of law, and that if one of those for whose benefit the duty was created is injured as a proximate result of disregard of the duty, he may maintain an action against the wrongdoer. *Shelton v. Paris,* 199 Or 365, 261 P2d 856; *Birks v. East Side Transfer Co.,* 194 Or 7, 241 P2d 120; and *Sullivan v. Mountain States Power Co.,* 139 Or 282, 9 P2d 1038.

The instructions to the jury, after defining the term ''negligence'' in the well-known manner, added:

''There is another kind of negligence, however; it is known as a violation of a statute. If one violates the terms of a statute * * * that would be negligence per se, that is, negligence in and of itself. The mere violation of the law, of a statute of the State, which I shall read to you a little later, would be negligence in and of itself.''

The instructions then told the jury of the presumption that ''the defendants were acting with due care and caution'' and, after declaring that the presumption ''is in itself evidence in favor of the defendants,'' pointed out ''the burden is upon the plaintiff to over-

come that presumption by satisfactory evidence." Shortly the instructions declared:

"* * * in order for the plaintiff to prevail in this case, it is necessary that you should find by a preponderance of satisfactory evidence that the defendant, one or both, was negligent in one or more of the specifications charged in the complaint * * *

"It is not necessary for plaintiff to establish all the acts of negligence that she alleged in her complaint, but she must satisfy you by a preponderance of satisfactory evidence as to one or more of the acts of negligence which she has alleged * * *.

"By a preponderance of evidence is meant the greater weight of the evidence. To illustrate this, if after a comparison of all the evidence you find the same to be equally balanced between the plaintiff and the defendant, the defendant or defendants, and then in that event you would be unable to say upon which side it weighs the heavier, then I instruct you that the plaintiff has failed to sustain the burden of proof and it would then be your duty to return your verdict in favor of the defendant or defendants. * * * * *

"I have also told you that it is necessary for the plaintiff to prove to you by a preponderance of satisfactory evidence that one or both defendants were guilty of negligence, * * *.

"I instruct you that the mere happening of an accident is not evidence of negligence and it is not to be taken by you as such. * * * They must prove negligence by a preponderance of evidence as I have outlined it to you."

Other parts of the instructions told the jury that a motorist who disregards a red light

"is guilty of negligence as a matter of fact and that if that negligence proximately brings about the accident or proximately contributes to an accident,

such person would be liable. * * * I instruct you that the defendant Liudahl has admitted that he entered the intersection at a time when the traffic control signal governing the movement of his car was showing a red light, that is, he went through a red light, and therefore he was negligent as a matter of law."

Toward the close the instructions told the jury:

"I instruct you that before plaintiff could recover from the defendant Liudahl in this case, she would have to prove to you by a preponderance of satisfactory evidence that the defendant Liudahl, in the operation of the vehicle he was operating, was negligent in one or more of the particulars charged against him in the complaint * * *. You are not allowed to speculate or conjecture about these matters and a verdict in favor of the plaintiff must be based upon a preponderance of satisfactory evidence * * *."

■ It will be observed that the instructions given to the jury were inconsistent. Evidently the trial judge himself so recognized when he sustained the motion for a new trial as to defendant Liudahl.

*Malloy v. Marshall-Wells Hardware Co.*, 90 Or 303, 173 P 267, 175 P 659, 176 P 589, declares:

"It is error to give contradictory instructions."
*Eid v. Larsen,* 200 Or 83, 264 P2d 1051, states:

"Generally, inconsistent instructions require a reversal."

The application of the rule enunciated in those decisions is illustrated in *Fehely v. Senders,* 170 Or 457, 135 P2d 283, 145 ALR 1092, and 88 CJS, Trial, § 339, p 897. The trial judge, therefore, did not err when he took the action just indicated upon the plaintiff's motion for a new trial.

■ Counsel for defendant Liudahl devotes must of his brief to the matter of proximate cause and seems to believe that since the jury returned its verdict for Liudahl it has become established that the plaintiff's present condition of health, whatever it may be, was not caused by the defendant. However, the defendant's brief says:

> "In any event, the matter of proximate cause was for the jury and also the matter of whether plaintiff was injured at all was a jury question. * * * This matter of proximate cause was for the jury; also the matter of whether plaintiff suffered any injury was for the jury. * * * Under the first ground it was clearly for the jury to say whether the plaintiff was actually injured as a proximate result of negligence on the part of Liudahl. This was a principal controversy in the case."

We are not certain what the defendant had in mind in projecting the question of proximate cause into its brief and repeatedly questioning whether the plaintiff's present condition of health is attributable to the collision, but we agree with the above quotations that the issues with which they are concerned were for the jury. The plaintiff presented upon those issues competent substantial testimony.

The challenged order which set aside the judgment in favor of the defendant Liudahl and granting the plaintiff a new trial against him is affirmed.