Argued June 17, affirmed July 8, reargued October 14,
modified and reaffirmed November 18, 1959

# ROSE *v.* PORTLAND TRACTION COMPANY

341 P. 2d 125
346 P. 2d 375

*Lamar Tooze, Jr.*, Portland, argued the cause for appellant. On the briefs were Phillips, Coughlin, Buell & Phillips and Jarvis B. Black, all of Portland.

*James P. Powers* argued the cause for respondent. On the brief were Joseph & Powers, Portland.

Before McAllister, Chief Justice, and Warner, Sloan and Millard, Justices.

MILLARD, J. (Pro Tempore).

This is an appeal by defendant Portland Traction Company from a judgment rendered, pursuant to a jury verdict for $20,000 in favor of plaintiff, by the Circuit Court of Multnomah County in an action, based upon negligence, for damages for personal injuries in-

curred in a collision between an automobile owned and operated by defendant Bessie Rose, in which plaintiff was riding as a guest passenger, and a bus owned and operated by defendant. Defendant Bessie Rose was charged with gross negligence, but, since plaintiff failed to prove as to her anything in excess of ordinary negligence, she was granted a nonsuit at the trial and, hence, hereafter when we refer to the defendant we will have reference to Portland Traction Company.

Defendant claims several assignments of error all having to do with failure to give certain instructions which would have removed from consideration of the jury certain charges of negligence, failure to grant in favor of defendant successive motions for nonsuit, for directed verdict and for judgment notwithstanding the verdict based upon lack of substantial evidence in some particulars.

Each of the errors claimed requires us to view the evidence in the light most favorable to plaintiff with regard to each particular. The evidence discloses that the accident happened on the morning of November 9, 1953, near the southeast corner of the intersection of Southwest Sixth Avenue and Southwest Hall Street in the city of Portland, on the east side of Southwest Sixth Avenue where there was a marked loading zone in front of a church located at the corner of the intersection. Southwest Sixth Avenue runs in a generally northerly and southerly direction and is 52 feet wide, and Southwest Hall Street runs easterly and westerly. Prior to the accident, defendant's bus was proceeding north on Southwest Sixth Avenue followed by a car owned and operated by Bessie Rose, a relative of plaintiff, and in which car plaintiff was riding as a guest passenger in the front seat to the right of the driver. Bessie Rose had formerly been licensed to drive in another state but had only a learner's permit to drive in Oregon. While

there was a conflict in the testimony, plaintiff's evidence indicated that she did not know that Bessie Rose did not have a regular operator's permit to drive.

Immediately prior to the collision, the loading zone, which was approximately 55 feet long according to plaintiff's evidence, and 50 feet according to defendant's testimony, and where parking was not allowed, was free of vehicles. While there was a conflict of testimony, plaintiff's evidence indicated that there was adjoining an additional free space of 15 to 18 feet along the curb.

As defendant's bus approached the intersection it pulled to the right into the loading zone at an angle so as to load and unload passengers, there being no attempt to park parallel with the curb. Defendant's driver testified that it was impossible to parallel park the bus, which was 35 feet long, without running into the intersection and backing up. There was evidence that regular bus loading zones in the city of Portland range from 60 to 80 feet. The bus driver admitted that the bus could have been driven directly up against the curb. At the time of impact the right front of the bus was from two to four feet [plaintiff said four feet] from the curb, and the left rear corner projected into the lane of traffic next to the center line of the street; and a car was coming from the opposite direction on its own side of said line but next to it.

Plaintiff called defendant Bessie Rose as an adverse witness, who testiifed in part concerning the accident as follows:

"Q When did you first observe the Portland Traction Company bus?

"A Well, I noticed it was going along ahead of us, you know. We were just kind of going along there together, but it was a little ahead of me.

"Q How far back from the scene of the accident would you approximate that, Mrs. Rose?

"A Well, that is kind of hard for me to say, you know, but I figured around 50 foot anyway.

"Q Then would you describe what happened after you first observed the bus?

"A Well, I just kind of, you know, going along, kind of watching my traffic, watching the bus and coming traffic to, you know, because, so just all at once the bus stopped right quick, and you know I had by foot on the brake. I had my foot on the brake all the time. I mean I just had it ready there to put on the brake, and so I noticed then the bus, the first thing I knew he just, he just like that just stopped. So Noami says, 'Bessie, put your brake on,' and I said, 'I have my foot on the brake,' and so then I just mashed it down a little harder, you know, and then that time we hit. So the bus stopped so quick that I just didn't have time to stop quick enough, just stopped too quick right in front of me.

"Q Did you observe any signal given by the bus driver?

"A No, I didn't observe any whatever.

"Q Did you observe any movement of the bus?

"A Yes, the bus was going, you know, up to that impact it was going right along ahead of me.

"Q Up to the impact?

"A Then it stopped abruptly, you see, just right there. It all happened so quick.

"Q Did you notice any other movement of the bus outside of stopping?

"A No, I just noticed it just kind of turned a little bit, only it didn't pull in beside the curb, just kind of turned that way, you know.

"Q You say it didn't pull inside the curb. Do you mean it went over towards the curb?

"A No, it just turned like this (indicating), but this end still stuck out. I couldn't see—I couldn't go around.

"Q But you noticed some movement towards the curb, is that right?

"A Well, it just kind of turned this way (indicating). I just saw that, I could still see the back of the bus right in front of me there. It didn't move up beside the curb. It just kind of angled a little bit towards the curb.

"Q It just angled a little bit towards the curb?

"A Just like that, you know, just an angle (indicating).

"Q Did you make any attempt to steer your automobile to the left to go around the bus?

"A No, I was trying to stop. I was just—because I couldn't go around.

"Q Why couldn't you go around, Mrs. Rose?

"A Because I saw a car coming. There was a car—I was meeting, you know, on the other side—I mean I couldn't go around on the left side.

\* \* \*

"Q Were you driving close to the yellow line or some distance away from it?

"A Well, I figure just an average distance, just kind of in between, you know, on the left-hand side next to the yellow line, but I wasn't over on the yellow line. I figure probably about, you know, half a foot or maybe a foot, somewhere like that.

\* \* \*

"Q Were you looking for any signal by the operator of the bus?

"A Yes, yes, I was, because I knew they had stop stands on the corner, you know.

"Q Did you see the stop lights go on?

"A No, I didn't see any stop lights. I didn't have any knowledge of it stopping until it was just stopped right in front of me, you see, and I had to apply my brakes there. I already had my foot on the brake and was going moderately.

"Q Did your automobile slow down at all?

"A Well, I think it did, but not probably, you know—it didn't slow to a stop but it just seemed

like it rolled, just kind of rolled. We was just a little bit on the hill there.

"Q What yould you estimate your speed at the time of the impact?

"A Well, I figure probably it could have been anywhere from, oh, I know it couldn't have been over 20 and maybe under, maybe 17 or 20, something like that.

"Q Did you exert full pressure on your brakes, Mrs. Rose?

"A Yes.

"Q And your brakes didn't take hold, it that right?

"A Well, not like I thought they should have. They, you know, the car just kept a-rolling.

"Q If your brakes had been operating as you thought they should have been, would you have been able to stop your car?

"A Well, I think I should have."

Plaintiff testified, in part, as follows:

"Q Will you tell the jury when you first noticed the bus that was on Sixth Street?

"A From two and one-half to three car lengths before we got to the bus.

"Q Did you have any knowledge of the bus prior to that time?

"A No.

"Q Now will you tell the jury, as you remember it, what happened after you observed the bus.

"A Well, I saw that we wasn't going to stop, and I said, 'Bessie, put on your brakes.' She said she had them on.

"Q I didn't get that last, Mrs. Rose.

"A Well, I told her to put on her brakes, and she said she had them on.

"Q And then what happened?

"A Then we hit the bus.

\* \* \*

"Q Did you notice the position of the bus in the street at the time of the accident?

"A Yes.

"Q What was the position of the bus?

"A Well, it was out in the left-hand lane.

\* \* \*

"Q And what did the bus do? What direction did it take immediately prior to the collision?

"A Well, it turned in to stop.

"Q You say it turned in. In what direction did it turn?

"A It turned to the right, but it didn't go in very far.

"Q Did you see any signal being given by the bus of any kind?

"A No.

"Q Could you see the front end of the bus prior to the accident, its position as regards the curb?

"A Well, yes. I could see—I thought there were two or three people getting onto the bus.

"Q In what position in regard to the curb was the front end of the bus? Could you tell from where you were?

"A Well, no.

"Q Did you feel any motion of the car in which you were driving after you told Mrs. Rose to put on the brake?

"A No.

"Q You felt no stopping of the car, is that right?

"A No.

"Q Did the car change direction in any manner after you told her to put on the brake?

"A No.

\* \* \*

"Q Now you don't actually know, do you, whether the car slowed some before the impact?

"A No, it didn't.

"Q I beg your pardon.

"A No, it did not, because we were coming down a hill. It is sort of a little hill at that place.

"Q You don't recall—

"A (interrupting) No, slowing up one bit, no.

"Q Do you actually know whether it did or not?

"A No, I would say that it did not slow up.

\* \* \*

"Q From the time that Bessie Rose got on Sixth Avenue until immediately before the accident what would you say her speed was in miles per hour?

"A Around 20 miles per hour.

"Q Around 20?

"A Yes.

"Q Could it have been any faster than that?

"A Yes, possibly 25.

\* \* \*

"Q You saw the stop lights come on on the back of the bus?

"A Yes.

"Q Did you see that when you glanced up there and saw the bus for the first time?

"A Yes."

Defendant's driver testified that he came to a complete stop, opened the door, and a lady passenger, having her foot on the lower step preparing to enter the bus at the moment of impact, was thrown to the ground as a result, and that several seconds elapsed between the stop and the impact. There were other passengers called as witnesses by defendant who generally substantiated the bus driver's testimony in that regard. The bus driver also testified that he gave a hand signal of his intention to stop before he turned in, although just prior thereto he observed no traffic to the rear. He further testified that the bus was so constructed that opening the door automatically put on the brakes.

An auto repairman testified that the main point of impact on the automobile came on the extreme right side of the right front fender. The vehicles were locked together as a result. Plaintiff lapsed into unconsciousness as a result of the impact and suffered severe injuries, and at least an injury to one foot was permanent in nature.

The defendant is charged with two alleged specifications of negligence in that, first, the operator of the bus failed to pull to the right-hand curb of the street to take on and discharge passengers, and, second, that said operator swerved to the right and came to a sudden stop without giving any warning to other vehicles using said street and without ascertaining that said movement could be made with safety.

As to the first assignment of error, defendant claims that the court erred in failing to give the following instruction:

"You will disregard plaintiff's claim that defendant, Portland Traction Company, was negligent in that the operator of said motor bus swerved to the right and came to a sudden stop without giving any warning to other vehicles using said street and without ascertaining that said movement could be made with safety on the ground and for the reason that there is no evidence to support this claim and for the further reason that it affirmatively appears from the evidence in this case that the motor bus owned and operated by the defendant, Portland Traction Company, had made an ordinary, regular stop and had been standing in a stop position for several seconds before the impact occurred, and for the further reason that it affirmatively appears from the evidence in this case that the stop lights on the rear of defendant's bus were in proper working order at the time of the accident."

The requested instruction has to do with the alleged negligence charged in the second specification thereof.

Defendant argues that the portion thereof relating to swerving to the right is groundless, since such action could only have a tendency to remove the bus from the path of the vehicle in which plaintiff was riding and, hence, the only possible ground of negligence has to do with the sudden stop. This reasoning would only apply if the following vehicle was not affected by the movement. ORS 483.126 provides:

> "The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety."

It further provides that

> "* * * Whenever the operation of any other vehicle may be affected by such movement he shall give a proper signal which is plainly visible to the driver of such other vehicle of the intention to make such movement."

This statute further provides that the required signal shall be given by either hand and arm or an approved mechanical device and "before turning to the right or left shall be given continuously during the last 50 feet traveled by the vehicle before turning." The fact that the stop light may have turned on does not mean that warning was given 50 feet before the movement was attempted. It is conceivable that had the warning been given, which plaintiff claims, Bessie Rose would have slowed down so that the movement would have safely occurred. But defendant says, in effect, that even assuming that the bus was improperly stopped, it could not, in view of defendant's evidence, have been a proximate cause of the collision. Apparently defendant's argument is based upon the proposition that, since plaintiff, in her direct testimony, indicated that the bus first had stopped, the fact that there was some testimony as to the inadequacy of the brakes in the Rose

car operated to establish the action of the Rose car as a superseding cause, and that defendant's situation as regards the bus was merely a condition and not a proximate cause. In the first place, there is no direct testimony that the brakes were inadequate. The testimony of Bessie Rose was not to the effect that if the bus brakes had been operating properly she would have been able to stop, but was to the effect that if her brakes had been operating as she though they should have, she would then think that she should have stopped her car. In other words, she expressed an opinion which may or may not be borne out by the facts. It could with equal propriety be argued that, faced with an impending collision, it might have seemed such a long time between the time of acquisition of that knowledge and the actual crash that it seemed as though the brakes should operate to stop the vehicle when, in fact, they could not. But, even assuming that the brakes of the Bessie Rose car were inadequate, that still does not excuse the defendant. In such a circumstance, the situation as regards defendant's bus might only have been a condition as regards the right of Bessie Rose to recover, but it was not such a condition as regards the right of plaintiff to recover. The negligence of the operator of a motor vehicle in stopping or parking may be a proximate cause of an injury even though the negligence of the operator of another vehicle is an active force in contributing to the final result. *Northern Indiana Transit, Inc. v. Burk*, 228 Ind 162, 89 NE2d 905, 911, 912. In that case attention is called from other authorities that this is an exception to the rule that a defendant is not in general liable for an independent act of negligence by a third person and

> "is to be found in that numerous class of cases in which a person by his negligence produces a dangerous condition of things, which does not become

active for mischief until another person has operated upon it by the commission of another negligent act, which might not unreasonably be anticipated to occur. The original act of negligence is then regarded as the proximate cause of the injury which finally results. The principle is, that the first act is regarded as being continuous in its operation up to the time of the second, and therefore, for the purposes of fixing the defendant's liability, the two acts are treated as contemporaneous."

 This is just another way of saying that an intervening act does not supersede a prior negligent act unless the first was reasonably unforeseeable. Proximate cause is ordinarily a question for the jury. *Kukacka v. Rock et al.,* 154 Or 542, 544, 61 P2d 297; *Wintersteen v. Semler,* 197 Or 601, 620, 250 P2d 420, 255 P2d 138. And where the negligent act continues up to the time of the impact and injury, this is true even though a third party's negligence may also be a factor. *Birks v. East Side Transfer Co.,* 194 Or 7, 29, 241 P2d 120; Restatement, Torts, Sec. 439. As to the test of foreseeability, see *Shelton v. Lowell,* 196 Or 430, 249 P2d 958; *Aune v. Oregon Trunk Railway,* 151 Or 622, 51 P2d 663.

Defendant argues further that, in any event, the court erred in not removing the question of proximate cause from the jury because defendant's evidence was so conclusive in its favor that the minds of reasonable men could not differ. We have carefully considered the authorities cited by defendant and are of the opinion that the able trial judge was correct in his ruling. In *Frampton v. Consolidated Bus Lines,* 134 W Va 815, 62 SE2d 126, where the facts were similar, it was held that the question of a sudden stop was for the jury. See, also, *Garrison v. Dixie Traction Co.,* 313 Ky 565, 232 SW2d 997; *LeMaster v. Fort Worth Transit Co.,*

138 Tex 512, 160 SW2d 224. We, therefore, find this assignment of error without merit.

The next assignment of error is based upon the court's failure to give an instruction which, in effect, would have removed from the jury's consideration that specification which charged defendant with negligence in failing to pull to the right-hand curb to take on and discharge passengers. This charge, admittedly, is based upon Ordinance No. 75607 of the City of Portland, as amended, and which, so far as applicable here, provides as follows:

> "Wherever no bus loading zone is provided at the curb, all motor buses and all trolley coaches, except such trolley coaches as may be operated from contact with a positive streetcar trolley wire, shall pull to the right hand curb for the purpose of taking on or discharging passengers; provided, however, that where the right hand lane or parking lane is occupied by parked motor vehicles, said trolley coaches or motor buses shall pull to the right as far as possible under the circumstances then existing."

■ Generally, the violation of an ordinance which imposes a duty for the protection of others is negligence per se, and if, as a proximate result of it, one entitled to the protection of such ordinance sustains injury, he has, in the absence of contributory negligence, a cause of action. *Birks v. East Side Transfer Co.*, supra; see, also, *Bernaski v. Liudahl*, 209 Or 553, 307 P2d 510. But only those whom an ordinance is designed to protect may predicate a claim of negligence on its violation. 38 Am Jur, Negligence, § 165, p 835; 65 CJS, Negligence, § 4(c), p 347; *Snyder v. Prairie Logging Co., Inc.*, 207 Or 572, 580, 298 P2d 180; *Hillman v. Northern Wasco County PUD*, 213 Or 264, 323 P2d 664.

■ Defendant, in support of this assignment of

error, argues that the ordinance in question was designed to protect bus passengers only and, hence, plaintiff is not within the class intended to be covered and cannot predicate negligence upon its violation. Defendant, in effect, says that since the ordinance in question provides that the bus shall pull to the right-hand side "for the purpose of taking on or discharging passengers," the sole purpose is the protection of passengers. It is further argued that this is so because Art XIII of the Traffic Code, of which the ordinance is a part, entitled "Street Cars and Safety Zones," is designed to promote safety of passengers and convenience in the operation of the public transit vehicles. It is to be noted that the ordinance is contained in the Traffic Code published by the city under the designation "Regulations Applicable to Railroads, Streetcars, Trolley or Motor Buses." The title does not indicate that it is designed to protect only passengers. Defendant's argument is based upon the assumption that the ordinance was designed to protect only one class when, in fact, it could have been designed to protect several classes. The nature of the duty imposed and the benefits resulting determine what persons are entitled to protection. *Fairport P. & E. R. Co. v. Meredith,* 292 US 589, 54 SCt 826, 78 L Ed 1446; *Brady v. Terminal R. Assn. of St. Louis,* 303 US 10, 58 SCt 426, 82 L Ed 614; *Fort Street Union Depot Co. v. Hillen* (CCA Mich), 119 F2d 307, certiorari denied 314 US 642, 62 SCt 82, 86 L Ed 515; *Atchison, Topeka & Santa Fe R. Co. v. Reesman,* 60 F. 370. *Snyder v. Prairie Logging Co.,* supra, offers an illustration of the practical application of this rule. In that case, the Basic Safety Code adopted by the State Industrial Accident Commission contained a provision that a flagman should be stationed to direct traffic when there was danger in felling a tree adjacent to

a road. The plaintiff was not on the road nor had he anything to do with traffic and, hence, it was held that he was not intended to be covered by this provision of the code and, therefore, could not be considered with relation to proximate cause. *In Burke v. Olson*, 206 Or 149, 291 P 759, a statute authorized school children to pass across a highway at any point while a school bus was stopped. A child crossed a public street when such a bus was stopped, but not for the purpose of either boarding or leaving the bus. It was held that the child was not protected by this statute since a reading of the statute indicated it was only for the protection of children going to or leaving the conveyance. See, also, *Hamilton v. Finch*, 166 Or 156, 109 P2d 852, 111 P2d 81; *Flynn v. Gordon*, 86 NH 198, 165 A 715. In the instant case, the preamble to Ordinance No. 75607, of which the section involved is a part, reads:

> "An Ordinance regulating traffic on streets and highways; providing for motor vehicle inspection; authorizing installation and use of parking meters; fixing standards; providing for certain fees; providing penalties and declaring an emergency."

Other sections of the same ordinance clearly reveal that the purpose of the ordinance was to regulate vehicular traffic as well as other traffic. That the requirement of the section of the ordinance in question to the effect that a bus stopping for the purpose of loading or unloading passengers should pull to the curb would, in fact, benefit vehicular traffic there can be no doubt. We are not inclined to adopt the narrow construction suggested by defendant, but hold that the ordinance provision was not only designed to protect bus passengers but also vehicular traffic using the streets.

But, in any event, defendant argues that violation of an ordinance must be the proximate cause of an injury to constitute a ground for recovery. 38 Am

Jur, Negligence, § 166, p 837; *Austin v. Portland Traction Co.*, 181 Or 470, 182 P2d 412. With this contention we agree. Defendant, however, argues that there is insufficient evidence to go to the jury on the question of proximate cause with relation to the charge of negligence having to do with failure to pull to the curb. If the construction attempted to be placed on this section of the ordinance in question by defendant be adopted, then there is force to its argument on the theory that plaintiff's driver was faced with a condition not caused by the negligence of defendant. Since we have not followed such construction, we are of the opinion that there was sufficient evidence to go to the jury. We base this on the same reasons relating to proximate cause as have been heretofore expressed with relation to the first specification of negligence. In addition to the authorities previously referred to, see, also, *Jaggers v. South East Greyhound Lines, Inc.*, 126 F2d 762; *Rubin v. Rainbo Baking Co.*, Ohio App, 44 NE2d 483; *Bacon v. Rochester Transit Corp.*, 147 NYS2d 453.

We have also reviewed the authorities submitted by defendant relating to proximate cause. If plaintiff's evidence be true, to the effect that there was 18 feet of free space adjoining the loading zone, the jury could well have found that defendant could have pulled completely out of the main traveled portion of the street. In any event, the jury could have found that the combined negligence of both drivers caused the accident. We find this assignment without merit.

■ The third assignment of error has to do with the court's failure to allow defendant's motion for nonsuit, motion for directed verdict and motion for judgment notwithstanding the verdict, all based upon the same points and authorities as set forth with relation to the first two assignments of error, and which we have al-

ready discussed, with some exceptions. These exceptions relate to the negligence of Bessie Rose, the driver of the automobile, and the imputation of that negligence to plaintiff, and also to the matter of alleged contributory negligence on behalf of plaintiff. There was ample evidence in plaintiff's behalf which, if believed, would negative not only contributory negligence, but also the imputation of any negligence on account of plaintiff's driver, all of which was submitted to the jury. We, therefore, find this assignment without merit.

In view of the conclusions reached, the judgment of the trial court is hereby affirmed.

**ON REHEARING**

ON REHEARING

*Lamar Tooze, Jr.* and *Lamar Tooze, Sr.* argued the cause for appellant. On the briefs were Tooze, Kerr, Tooze & Morrell, Portland, and Phillips, Coughlin, Buell & Phillips and Jarvis B. Black, all of Portland.

*James P. Powers* argued the cause for respondent. On the brief were Joseph & Powers, Portland.

O'CONNELL, J.

The defendant has petitioned for a rehearing, alleging that our former decision was in error in several particulars.

It is argued that we erred in deciding that

Ordinance No. 75607, requiring buses to park as close to the curb as practicable was applicable for the protection of the plaintiff. In our former opinion we said that the ordinance in question was designed not only to protect bus passengers but also vehicular traffic using the street, clearly implying that the violation of the statute would constitute negligence per se. It was not necessary for us to pass on the applicability of the ordinance because the defendant failed to take an exception to the instructions relating to the ordinance and made reference to it only by implication in a requested instruction which was refused. The requested instruction, the rejection of which is assigned as error, read as follows:

"You will disregard plaintiff's claim that the defendant, Portland Traction Company, was negligent in that the operator of said motor bus failed to pull to the right hand curb of said Southwest Sixth Avenue to take on and discharge passengers on the ground and for the reason that there is no evidence to support this claim and for the further reason that it affirmatively appears from the evidence in this case that the motor bus was pulled to the right as far as possible under the circumstances then existing."

The refusal to give this instruction does not permit defendant to attack the trial court's instruction to the effect that the violation of the ordinance would constitute negligence per se. The instruction requested simply tells the jury that there was no evidence to support the claim that defendant's servant was negligent in failing to pull up to the right hand curb to take on and discharge passengers. The instruction makes no mention of the ordinance and is applicable, if appropriate, to the breach of a common law duty. In short, the requested instruction did no more than state that there was no evidence of negli-

gence in the movement of the bus toward the curb. As we shall point out later, there was such evidence.

■ The defendant claims that error was committed in holding that the jury could find that the stopping of the bus in violation of the city ordinance was the proximate cause of the plaintiff's injury. We held that the jury could find that the combined negligence of both drivers caused the accident. The defendant contends that there is no evidence to connect the violation of the ordinance with the plaintiff's injury. We may concede this and yet defendant is not aided in this case. We would be presented with the same problem whether the sudden stopping of the bus or its turning toward the curb was or was not a violation of the ordinance. The question is whether there is evidence from which the jury could conclude that defendant's servant was negligent and whether that negligence was a substantial factor in producing the injury.

Bessie Rose, the plaintiff's host, testified that "the bus stopped so quick I just didn't have time to stop quick enough, just stopped too quick right in front of me," and "I didn't have any knowledge of it [the bus] stopping until it was just stopped right in front of me, you see, and I had to apply my brakes there. I already had my foot on the brake and was going moderately." She said essentially the same thing in other testimony given by her. Both plaintiff and Bessie Rose stated that they did not see the bus driver give a signal to stop or turn. This was not merely negative testimony as evidenced by the following testimony of Bessie Rose:

"Q. Were you looking for any signal by the operator of the bus?

"A. Yes, yes, I was, because I knew they had stop stands on the corner, you know."

There was also evidence that the bus driver did not exercise sufficient care to determine whether he could stop with safety. He testified as follows:

"Q. Just prior to starting to make the stop, did you observe any traffic to the rear?
"A. No.

"Q. Do you have facilities on the bus for that purpose?
"A. Yes.

"Q. It's a rear view mirror, is it?
"A. Yes, it is.

"Q. Do you remember whether you looked in that mirror to see if you had any traffic follow-you?
"A. I don't remember that.

"Q. You don't remember doing that?
"A. No."

The defendant argues that the foregoing evidence, together with the other evidence presented on behalf of plaintiff, must be considered in light of the physical facts which, defendant maintains, clearly shows that the conduct of defendant's servant could not have constituted a legal cause of injury. This is arrived at by the following calculation. The car was proceeding approximately fifty feet behind the bus at a speed not exceeding 25 miles per hour. Plaintiff said, "Bessie put your brake on" to which Bessie replied, "I have my foot on the brake." The driver "mashed it down a little harder" and then the impact occurred. Defendant relies on ORS 483.444 for the computation that a car travelling 25 miles per hour with proper brakes should be able to stop in a distance of 58 feet. At 25 miles per hour a car moves approximately 36 feet in one second. According to Bessie Rose, her speed at the moment of impact could not have been over 20 miles per hour. Thus,

it is argued, the evidence clearly shows that Bessie could have stopped her car within the time during which the discussion between her and plaintiff took place, if her brakes were not defective. It is asserted, therefore, that the lack of proper brakes was the sole proximate cause of the injury. These calculations are based upon the assumption that at the time the following car was fifty feet from the bus Bessie Rose knew, or had reason to know, that the bus driver intended to stop. If the jury believed that she had no warning that the bus driver intended to stop at the corner, they could have concluded that it was reasonable for her not to apply her brakes earlier than she did. As we said in our former opinion, "It is conceivable that had the warning been given, which plaintiff claims, Bessie Rose would have slowed down so that the movement would have safely occurred."

We think that the evidence from which an inference of defendant's negligence can be drawn is weak but we are not prepared to say that a reasonable jury could not draw the inference.

Subject to the modification with respect to the applicability of the ordinance, we adhere to our former opinion.