Argued October 8, reversed and remanded December 12, 1974

PITCHER, *Respondent, v.* LEATHERS, *Appellant.*

529 P2d 381

*Richard Roseta,* Eugene, argued the cause for appellant. On the briefs were Jaqua & Wheatley.

*Robert J. McCrea,* Eugene, argued the cause for respondent. On the brief were Mulder, Morrow & McCrea, P.C.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE and HOWELL, Justices, and SLOPER and LEAVY, Justices pro tempore.

McALLISTER, J.

The plaintiff, Vi Pitcher, brought this action to recover damages for injuries sustained in an automobile collision allegedly caused by the negligence of the defendant Ronald Leathers.

In response to a motion by plaintiff for a directed verdict the court found as a matter of law that defendant was negligent in failing to keep a proper lookout and directed a verdict for plaintiff. The jury then awarded plaintiff general and special damages totaling $26,888.34. Defendant appeals.

Defendant contends that the court erred in finding as a matter of law that defendant failed to maintain a proper lookout and in directing a verdict for plaintiff. Defendant also complains of the court's refusal to grant his motion for mistrial because of plaintiff's improper injection of insurance into the case.

The collision occurred about noon on July 14, 1971, on highway 99 south about two miles south of Cottage Grove. The highway at that point is a straight paved two lane highway running in a north-

south direction and is intersected by a road that led on the east to a Weyerhaeuser mill and on the west to a parking lot across from the mill. There was a flashing yellow caution light at the intersection.

A large truck carrying wood chips to the mill was stopped in the southbound lane waiting for some northbound cars to pass before he made his left turn toward the mill. Plaintiff, who also intended to turn into the mill stopped her Fiat car immediately behind the truck.

Defendant was also driving south on highway 99S some distance behind plaintiff. A few seconds after plaintiff had stopped in back of the truck she heard something behind her, glanced in her rearview mirror, and saw defendant's car approaching from the rear. Defendant's car collided with the rear of her car.

Defendant testified that he had driven that road almost every day and that, although the road was straight and visibility good, he just did not see plaintiff's car until he was about 100 feet away. There was a rise in the road about 500 feet north of the intersection, which had its highest point approximately 30 feet above the normal road level. As the defendant came over the rise he noticed a large chip truck, but his attention was diverted by a group of people on the west side of the road which he thought "weren't watching too much" and "were just heading out". He watched this group until he passed them and when he looked back he noticed for the first time plaintiff's car stopped behind the chip truck. He attempted to stop, but was unable to do so until his car had collided with the rear of plaintiff's automobile. He testified that if he had veered to the left he would have placed himself in the path of oncoming northbound traffic and if he had

gone to the right he would have hit one of the people standing along the road.

This case is a replay of *Lehr v. Gresham Berry Growers et al,* 231 Or 202, 372 P2d 488 (1962), in which we mistakenly held that the trial court could decide as a matter of law that a driver had been guilty of negligence in one element of the trilogy of speed, lookout and control. *Lehr* was cited in later cases, but only to distinguish it from the case then under consideration.

In 1965 we overruled *Lehr* in *Miller v. Harder,* 240 Or 418, 420-421, 402 P2d 84, in which we said:

"We have concluded that *Lehr v. Gresham Berry Growers, et al,* supra, must be overruled. We will not reargue the merits of the case. The case has become, however, a matter of much concern to this court, and we are sure, of greater concern to the trial practice. Since the decision in the case we have had many cases presented in which it has been claimed that the *Lehr* decision controls. As a result we have been obliged to attempt to analyze and weigh factual patterns that vary from the facts in the *Lehr* case in differing degrees. *Jaeger v. Estep,* 1963, 235 Or 212, 384 P2d 175; *Wilson v. Clark,* 1964, 238 Or 126, 393 P2d 659; *Rough v. Lamb,* 240 Or 240, 401 P2d 10, and other cases still pending. We are sure that this has become a much greater problem to the trial courts.

"Experience has taught that for the court to attempt to measure the varying facts in each of these cases against the pattern of facts in the *Lehr* case and to then decide as a matter of law how well each new case fits the pattern is unsound, if not unworkable. The deviation from the peculiar facts of *Lehr* change with each case, and we have concluded that the court is actually doing the jury work of matching facts against the reasonable man test.

"In addition, the complexities of traffic conditions range from two or three cars following in a single lane of travel to bumper to bumper traffic in multi-lane streets and highways; from highway traffic uncontrolled by signals to urban controlled traffic. In these rear end collision cases whether or not a statutory rule such as following too closely, the giving of a signal, or speed has been violated in a given case should be left for the jury under proper instruction. This is equally true of the non-statutory duties. These considerations have caused us to reach the conclusion that we should follow the earlier cases cited in the dissenting opinion in the *Lehr* case and submit these cases to the jury.

■ Since *Miller v. Harder* this court has again followed the rule that, except in rare cases, the issues of negligence, causation and contributory negligence in automobile collision cases are questions for the jury. *Rogers v. Green,* 241 Or 435, 406 P2d 553 (1965); *Morrill v. Rountree,* 242 Or 320, 408 P2d 932 (1965); *Ewing v. Izer,* 243 Or 367, 412 P2d 795 (1966); *Turner v. Jentzen,* 243 Or 427, 414 P2d 316 (1966); *McPherson v. Cochran,* 243 Or 399, 414 P2d 321 (1966). Those rare cases in which negligence has been found as a matter of law include *Blanchette v. Arrow Towing Co.,* 242 Or 590, 410 P2d 1010 (1966), and *Simmons v. York,* 252 Or 279, 449 P2d 645 (1969).

Since we learned the hard way with *Lehr,* we do not intend to make the same mistake again. We will, as we did prior to *Lehr,* hold that issues of negligence and causation, including questions of speed, lookout and control, are for the jury.[1]

[1] Dissenting opinion by McAllister, C.J., concurred in by O'Connell, now C.J., in Lehr v. Gresham Berry Growers et al, supra, 231 Or at 215, reading in part as follows:

"In cases involving rear-end collisions this court has held

██ A recent statement of the rule regarding lookout is stated in *Ewing v. Izer,* supra, as follows:

"\* \* \* Human vision cannot simultaneously comprehend all points of the compass. Accordingly, a motorist is not held as a matter of law to be under a duty to look in a specific direction at a specific time. *Britton v. Jackson et al,* 226 Or 136, 359 P2d 429 (1961); *Phillips, Gdn. v. Creighton, Adm.,* 211 Or 645, 316 P2d 302 (1957). The standard of lookout required is that of the reasonable motorist under the same or similar circumstances. The determination of what a reasonable person would have done is properly left to the jury unless the court can say without hesitation that no reasonable person would have proceeded as the plaintiff did under all the evidence. *Martin v. Harrison,* supra. Whatever our individual notions of due care may be, we cannot say as a matter of law that other reasonable persons could not disagree. Accordingly, the question in this case was properly submitted to the jury." 243 Or at 370.

██ In the case at bar we find that the trial court erred in holding that defendant was negligent as a matter of law in failing to keep a proper lookout. The question should have been submitted to the jury.

In view of our disposition of the first assignment of error it is not necessary to consider the second assignment regarding the mention of insurance.

Reversed and remanded for a new trial.

---

uniformly that the issues of negligence and proximate cause are for the jury. *Britton v. Jackson et al,* 226 Or 136, 359 P2d 429 (1961); *Boyle v. Cottrell et al,* 222 Or 565, 353 P2d 838 (1960); *Johnson v. L. A.-Seattle Mtr. Exp., Inc.,* 222 Or 377, 352 P2d 1091 (1960); *English v. Royce et al,* 220 Or 402, 349 P2d 660 (1960); *Rose v. Portland Traction Co.,* 219 Or 1, 341 P2d 125, 346 P2d 375 (1959); *Denton v. Arnstein,* 197 Or 28, 250 P2d 407 (1952). \* \* \*"

See, also, McPherson v. Cochran, supra, 243 Or at 402.

HOWELL, J., dissenting.

The majority opinion states:

> "Since we learned the hard way with *Lehr,* we do not intend to make the same mistake again. We will, as we did prior to *Lehr,* hold that issues of negligence and causation, including questions of speed, lookout and control, are for the jury." (Footnote omitted.)

Apparently, in all future cases involving rear-end collisions, the issues of causation and negligence will be questions for the jury. This is an extension of the rule announced in *Miller v. Harder,* 240 Or 418, 402 P2d 84 (1965), which, as the majority states, overruled *Lehr v. Gresham Berry Growers et al,* 231 Or 202, 372 P2d 488 (1962). In *Blanchette v. Arrow Towing Co.,* 242 Or 590, 410 P2d 1010 (1966), we stated:

> "* * * [I]t was not intended in the *Miller* case to announce a doctrinaire rule that every rear-end collision case must necessarily be submitted to the jury. No doubt it is a rare case arising out of an automobile accident—whether it be a rear-end collision or otherwise—in which it appears as a matter of law that the plaintiff is guilty of * * * negligence." 242 Or at 593.

In "rare" cases the rule of *Miller* has not been applied. *Blanchette v. Arrow Towing Co.,* supra, and *Simmons v. York,* 252 Or 279, 449 P2d 645 (1969). I believe that the instant case is another of the "rare" cases and that the facts did not present jury questions on lookout, speed and control. I would affirm the judgment.

SLOPER, J., joins in this dissent.