Argued January 7, affirmed April 1, petition for rehearing
denied May 13, 1975

BERG, *Appellant, v.* MENGORE, *Respondent.*

533 P2d 801

*Raul Soto-Seelig* of Rask & Soto-Seelig, Portland, argued the cause and filed briefs for appellant.

*James C. Tait,* Oregon City, argued the cause for respondent. With him on the brief were Frederic D. Canning, and Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

BRYSON, J.

This is an action to recover damages for injuries sustained by plaintiff in an automobile accident. The jury returned a verdict in favor of defendant and plaintiff appeals.

Plaintiff lived in Oregon City and defendant lived in Sweet Home, Oregon. They had been good friends for some nine years and remained so at the time of trial. They planned to go to a circus performance in Portland, and defendant was driving to Oregon City to meet plaintiff. Defendant's car ran out of gasoline some four miles south of Oregon City on Highway 99E. Plaintiff picked defendant up and they went to the circus. About midnight, March 6, 1971, they returned to Oregon City, obtained some gasoline, drove to defendant's car and started the motor.

Plaintiff drove north toward Oregon City and defendant followed, driving his car. Highway 99E is a four-lane highway with two lanes for northbound traffic and two lanes for southbound traffic. Plaintiff was proceeding in the right, outside lane at 45 to 50 miles per hour and defendant was proceeding in the left, or inside, lane at 60 to 65 miles per hour. The posted speed limit was 55 miles per hour.[1]

At this point a "phantom" car heading south appeared in front of plaintiff's and defendant's automobiles in their northbound traffic lanes. On direct examination plaintiff testified:

"Q * * * At a point then you noticed another vehicle. Is that right?

"A Yes. As I rounded the curve I seen a car, reflection of the headlights coming on the pavement. As I rounded the curve this car was coming towards me cutting the corner and I immediately started to slow down.

"* * * * *.

"A * * * I braked fairly hard but not enough to make it skid.

"* * * * *.

"A * * * I veered off to the right as far as I could and they had a concrete wall, retaining wall on the right-hand side of the road approximately one foot from the solid line.

"* * * * *.

"A * * * I realized that I was going to miss the [phantom] car. He was out of my lane. And Mr. Mengore's car was proceeding around the

[1] ORS 18.470 (comparative negligence) and the amendments to ORS 483.102 (basic rule) and ORS 483.126 (stopping), adopted by the legislature in 1971, were not effective at the time of this accident.

corner and just as I seen I was going to miss this car I looked in my rear view mirror to see and at that time I seen him [defendant] swerve to the right. And that is when he ran into me."

Both parties testified that defendant's car was 100 to 150 feet behind plaintiff's car, but in the left lane for northbound traffic. Plaintiff testified:

"Q Okay. Did the Defendant stop or turn or swerve to avoid hitting you?

"A He swerved to the right to avoid hitting the other car, I presume. And that is when he ran in [sic] the back of me."

The plaintiff and the defendant were the only witnesses called regarding the facts pertaining to the accident, and both parties testified that defendant's car collided with the rear of plaintiff's car when the "phantom" car was opposite the plaintiff's car.

Defendant testified that as he saw the "phantom" car coming toward him in his lane of traffic he pulled to the right and slammed on his brakes. He testified:

"Q And he was coming towards you?

"A Yes.

"Q When you saw this, what did you do?

"A I just for an instant thought of the only thing I could do. Things flashed through my mind on what alternatives I had. And just more on instinct than anything else I pulled my wheel to the right and slammed on my brakes to avoid hitting this other vehicle.

"* * * * *

"A As I swerved my vehicle into the outside lane I observed Mr. Berg's vehicle in the outside lane in front of me. I realized that I was going to collide with his vehicle."

Plaintiff alleged that defendant was negligent in failing to maintain a proper lookout, in failing to have his vehicle under proper control, and in driving at an excessive speed. Defendant generally denied plaintiff's allegations and affirmatively alleged that plaintiff was contributorily negligent in failing to maintain a proper lookout and to keep his vehicle under proper control and "in suddenly slowing or bringing his vehicle to a stop in the outside northbound lane of travel, when said movement could not be done with safety." Defendant also affirmatively alleged that he was operating his vehicle in a northerly direction "in the inside lane for northbound travel * * * a short distance behind the vehicle of the plaintiff, * * * a third vehicle operated by a person unknown, while traveling southbound on Highway 99E swerved into both lanes designated for northbound travel and plaintiff suddenly brought his vehicle to a stop in the outside lane for northbound travel at a time when defendant was swerving from the inside northbound lane into the outside northbound lane in order to avoid the unknown vehicle."

Plaintiff first assigns as error the trial court's denial of plaintiff's motion to strike all of defendant's allegations of contributory negligence in the affirmative answer of defendant. The motion was, in effect, a request that the court hold as a matter of law that plaintiff was not guilty of any of the negligence alleged in the answer. *See Rough v. Lamb,* 240 Or 240, 243, 401 P2d 10 (1965). Since *Miller v. Harder,* 240 Or 418, 421, 402 P2d 84 (1965), wherein we overruled in part our decision in *Lehr v. Gresham Berry Growers et al,* 231 Or 202, 372 P2d 488 (1961), we have generally held that these and similar issues of negli-

gence and proximate cause are questions for the jury. In *Miller,* we stated:

"* * * In these rear end collision cases whether or not a statutory rule such as following too closely, the giving of a signal, or speed has been violated in a given case should be left for the jury under proper instruction. This is equally true of the non-statutory duties. These considerations have caused us to reach the conclusion that we should follow the earlier cases cited in the dissenting opinion in the *Lehr* case and submit these cases to the jury." 240 Or at 421.

In the *Lehr* dissent we stated:

"In cases involving rear-end collisions this court has held uniformly that the issues of negligence and proximate cause are for the jury. *Britton v. Jackson et al,* 226 Or 136, 359 P2d 429 (1961); *Boyle v. Cottrell et al,* 222 Or 565, 353 P2d 838 (1960); *Johnson v. L. A.-Seattle Mtr. Exp., Inc.,* 222 Or 377, 352 P2d 1091 (1960); *English v. Royce et al,* 220 Or 402, 349 P2d 660 (1960); *Rose v. Portland Traction Co.,* 219 Or 1, 341 P2d 125, 346 P2d 375 (1959); *Denton v. Arnstein,* 197 Or 28, 250 P2d 407 (1952). The only exception is *Dormaier v. Jesse,* 230 Or 194, 369 P2d 131 (1962), which contains a dictum to the effect that a defendant who drove into a blinding dust storm at approximately 45 miles per hour and collided with the rear of another vehicle was negligent as a matter of law." 231 Or at 215.

In *Hess v. Larson,* 259 Or 282, 286, 486 P2d 533 (1971), the plaintiff, as in the case at bar, contended "that there was no evidence at all as to her speed, lookout, or control, and that it was error to submit these allegations of contributory negligence to the jury." We held, in *Hess:*

"As a rule this court has refused to decide questions of negligence, especially in automobile

accident cases, as a matter of law. Where there is evidence upon which the jury can base a determination, questions of negligence and contributory negligence are for the jury and not for the court. [Citations omitted.] * * * We overruled the *Lehr* case for this reason in *Miller v. Harder,* 240 Or 418, 402 P2d 84 (1965) and have since refused to determine questions of negligence as a matter of law in all but the most *exceptional accident cases.* * * *." (Emphasis added.) 259 Or at 286-87.

*Stevenson v. Hole,* 269 Or 530, 525 P2d 1015 (1974), wherein we upheld the trial court in granting a directed verdict in favor of plaintiff although defendant alleged contributory negligence on the part of plaintiff, was such an "exceptional accident case." In *Stevenson* the defendant last noticed the plaintiff's vehicle when it was 150 to 200 feet from the intersection where plaintiff was making a left turn. Defendant next looked at plaintiff's vehicle when he was 30 to 50 feet away. We stated, "and he could not have then avoided hitting her because he was unable to stop soon enough. As a result, we can only conclude that if she failed to give any signal of her slowing or turning, such failure was not a cause of the accident. It would have happened anyway because defendant was not looking and would not have seen any signals soon enough to stop had they been given."

■ In the case at bar plaintiff knew that defendant's vehicle was 100 to 150 feet behind him. He also knew, according to the testimony, that the "phantom vehicle" was proceeding diagonally in the direction of defendant's automobile, in the inside lane. Notwithstanding these facts, plaintiff suddenly slowed his vehicle to approximately five miles per hour when he knew defendant, because of the "phantom vehicle," was turning to the outside lane "to avoid hitting" the

"phantom vehicle." From these facts the jury could have found that plaintiff was negligent in failing to properly control his car and in suddenly slowing his vehicle in the path of defendant's vehicle when such movement could not be done with safety. Under the facts of this case, the court did not err in submitting the question of both plaintiff's and defendant's negligence to the jury under proper instructions.

■ Plaintiff next assigns as error the trial court's refusal to direct a verdict in favor of plaintiff as a matter of law because "defendant admitted negligence." Plaintiff refers in this assignment to defendant's testimony that he was driving between 60 and 65 miles per hour just prior to the accident. The posted speed at the place of the accident was 55 miles per hour.

Under the particular facts of this case, the jury could have found that defendant had acted as a reasonably prudent person under the circumstances then and there existing although he may have been driving 5 to 10 miles per hour in excess of the posted speed limit. We find no error in this respect.

■ Plaintiff finally assigns as error the trial court's instructing the jury "in accordance with Oregon Uniform Jury Instruction No. 10.10," emergency instruction. Plaintiff argues that this instruction should not have been given because defendant placed himself "in a perilous position" by driving at an excessive speed on an unfamiliar highway. We find no error in this respect. Plaintiff completely ignores the "phantom" southbound vehicle in both plaintiff's and defendant's lanes of traffic. The instruction was given so that it applied to both plaintiff and defendant.

■ Whether defendant was responsible for the emer-

gency was for the jury to decide under all the facts of the case. Finding no error, the judgment is affirmed.

Affirmed.

TONGUE, J., dissenting.

The majority says that we have "generally held" in rear-end collision cases that *"allegations* of negligence are questions for the jury,"[1] at least "in all but the most exceptional accident cases"[2] and that, in any event, there was sufficient evidence of contributory negligence to go to the jury in this case. I cannot agree.

1. *"Allegations of negligence" in rear-end collision cases are not of themselves sufficient to require the submission to the jury of the question of negligence in the absence of evidence upon which the jury can properly base a finding of negligence.*

In *Miller v. Harder,* 240 Or 418, 420, 402 P2d 84 (1965), in an opinion by Justice SLOAN, a majority of four members of this court, in speaking of rear-end collision cases, and without discussion of the sufficiency of the evidence in that case, said:

> "Experience has taught that for the court to attempt to measure the varying facts in each of these cases against the pattern of facts in the *Lehr* case [Lehr v. Gresham Berry Growers et al, 231 Or 202, 372 P2d 488 (1962)] and to then decide as a matter of law how well each new case fits the pattern is unsound, if not unworkable. The deviation from the peculiar facts of *Lehr* change with each case, and we have concluded that the court is actually doing the jury work of matching facts against the reasonable man test."

---

[1] Citing Miller v. Harder, 240 Or 418, 421, 402 P2d 84 (1965).
[2] Citing Hess v. Larson, 259 Or 282, 286, 486 P2d 533 (1971).

The minority, in a specially concurring opinion, was of the view that, upon considering the facts of that case, there was sufficient evidence to provide a proper basis for a finding by the jury in that case, but (at 427) that:

"It seems highly unreasonable for this court to overrule the *Lehr* case and thus hold that, even though a person obeys the mandate of the law, a jury can still find negligence. Also, when there is no question of fact for the jury to decide, to permit the jury then to determine the law of the case.

"The majority do not say the *Lehr* case is wrong. They overrule that decision simply because they feel that the lawyers, trial courts and the members of this court are unable to 'analyze' and 'weigh factual patterns.'

"* * * * *

"Courts are constantly called upon to make 'accurate distinctions' between factual situations in order to determine the sufficiency of evidence to take a negligence case to the jury. * * *"

The history of the decisions of this court in rear-end collision cases since *Miller* is instructive.

One year later, in *Blanchette v. Arrow Towing Co.*, 242 Or 590, 593, 410 P2d 1010 (1966), this court said:

"* * * [I]t was not intended in the *Miller* case to announce a doctrinaire rule that every rear-end collision case must necessarily be submitted to the jury. * * *"

Although this court recognized in *Blanchette* that it would be a "rare case" that would not require submission to the jury of the issue of negligence in a rear-end collision case, it nevertheless considered the particular facts of that case and held that it was such a "rare case" and that the trial court properly held that

the evidence of plaintiff's contributory negligence was so clear and conclusive as to require that he be held guilty of contributory negligence as a matter of law.

In *McPherson v. Cochran*, 243 Or 399, 414 P2d 321 (1966), and in *Jones v. Burns*, 257 Or 312, 478 P2d 611 (1970), both rear-end collision cases, although holding that the question of contributory negligence should have been submitted to the jury, this court first examined the evidence to determine whether there was sufficient evidence from which, if believed, the jury could properly find contributory negligence.

In *Simmons v. York*, 252 Or 279, 449 P2d 645 (1969), another rear-end collision case, this court, although again referring to the case as "one of the few cases in which the inference of negligence is the only inference which the evidence suggests," again considered the facts of that case. After doing so we held that the evidence of defendant's negligence was so clear and conclusive so as to make it proper for the trial court to grant plaintiff a directed verdict on that issue and to hold, as a matter of law, that the defendant was negligent.

Although not a rear-end collision case, this court in *Hess v. Larson*, 259 Or 282, 286-87, 486 P2d 533 (1971), said (as quoted by the majority in this case):

"As a rule this court has refused to decide questions of negligence, especially in automobile accident cases, as a matter of law. *Where there is evidence upon which the jury can base a determination, questions of negligence and contributory negligence are for the jury and not for the court.* [Cases cited] We departed from this rule in Lehr v. Gresham Berry Growers et al, 231 Or 202, 372 P2d 488 (1962) and as a consequence found ourselves determining questions of fact which properly be-

longed to the jury. We overruled the *Lehr* case for this reason in Miller v. Harder, 240 Or 418, 402 P2d 84 (1965) and have since refused to determine questions of negligence as a matter of law *in all but the most exceptional accident cases.* \* \* \*" (Emphasis added)

Nevertheless, as it had done in *Blanchette, Simmons, McPherson* and *Jones,* this court in *Hess* went on to consider whether, under the record in that case, there was "evidence upon which the jury [could] base a determination" and, upon finding that there was such evidence, affirmed the submission to the jury of the issue of contributory negligence.

Thus, it appears that in *Hess* this court was of the view that its previous decision in *Lehr* was improper only because in that case this court "found ourselves determining questions of fact which properly belonged to the jury." Conversely, it appears that this court did not hold in *Hess* that *"allegations"* of negligence and contributory negligence in rear-end collision cases are of themselves sufficient to require submission of such questions to the jury in "all but the most exceptional accident cases," regardless of the sufficiency of the evidence of negligence.

According to the majority, *Stevenson v. Hole,* 269 Or 530, 525 P2d 1015 (1974), was another "exceptional case." However, in that case, one also involving a rear-end collision, we simply held that the trial court was correct in its holding that the evidence of plaintiff's alleged contributory negligence was insufficient to be submitted to the jury and in withdrawing that question from the jury—just as contended by the plaintiff in this case. We did so without discussion of *Miller* and without considering whether that case qualified as a "rare" or "exceptional" case, within

the rule of *Miller*. Instead, we considered the evidence as offered in that case and held that it was not sufficient to entitle defendant to have the issue of contributory negligence submitted to the jury.

In the most recent rear-end collision case, *Pitcher v. Leathers*, 270 Or 666, 529 P2d 381 (1974), a majority of this court, again quoting *Miller*, held that the issue of defendant's negligence should have been submitted to the jury in that case. But, again, the majority reached that conclusion only after a consideration and discussion of the evidence in that case, holding that such evidence was not so conclusive as to require a holding that defendant was negligent as a matter of law. A dissenting opinion contended that the facts were sufficient to require such a holding and to qualify as one of those "rare cases" in which the question of negligence should not have been submitted to the jury.

Thus, since *Miller* this court has held in rear-end collision cases that it was improper to withdraw the question of negligence or contributory negligence from the jury in three rear-end collision cases *(Mc-Pherson, Jones* and *Pitcher)*, but only after considering the sufficiency of the evidence in each of those cases. At the same time, however, this court has held that it was proper to withdraw that issue from the jury in three rear-end collision cases *(Blanchette, Simmons* and *Stevenson)*, after considering the evidence in each of those cases.[9]

Indeed, in *Blanchette* and *Simmons* we held that

[9] In Pitcher v. Leathers, 270 Or 666, 529 P2d 381 (1974), the court also cited some other automobile accident cases in which this court held that issues of negligence and contributory negligence will be submitted to the jury, except in "rare

the affirmative proof of negligence was so clear as to require a directed verdict against the defendant on the issue of negligence, thus removing from the jury even the credibility of such evidence. That, of course, was far more drastic than to hold, as in *Stevenson* and as contended in this case, that the evidence of negligence was insufficient to go to the jury.

It follows, I most respectfully submit, that what this court has actually done in rear-end collision cases, as in other negligence cases, has been to examine the facts of each case to determine whether or not there was sufficient evidence of negligence so as to require the submission of that question to the jury, rather than to apply any hard and fast rule to the effect that "allegations of negligence are questions for the jury," subject to exception in "rare" or "exceptional" cases.

It also follows that the sole question to be decided in this case is whether there was evidence from which the jury could properly find contributory negligence.

2. *There was no evidence of contributory negligence by the plaintiff in this case.*

The finding by the majority that there was sufficient evidence of contributory negligence to require the submission of that question to the jury was based upon its holding that the jury could have found that the plaintiff was negligent "in failing to properly control his car and in suddenly slowing his vehicle in the path of defendant's vehicle," by reason of the "facts" that

---

cases." None of those other cases, however, were rear-end collision cases.

As previously noted, Hess v. Larson, *supra* note 2, also was not a rear-end collision case.

"* * * plaintiff suddenly slowed his vehicle to approximately five miles per hour when he knew defendant, because of the 'phantom vehicle,' was turning to the outside lane 'to avoid hitting' the 'phantom vehicle'."

With all due respect to the majority, I submit that there was no evidence whatsoever to establish as a "fact" that when plaintiff suddenly slowed his car he *"knew"* *at that time* that defendant was there and at that time "turning to the outside lane 'to avoid hitting' the 'phantom vehicle.' "

On the contrary, the testimony was that when plaintiff was last aware of defendant's car it was from 100 to 150 feet behind his car, and in the "inside lane," and that he did not look into his rear-view mirror or see defendant's car again until *after* he saw the "phantom car" coming at him partly in his lane as he rounded the curve in the "outside lane."

According to the uncontradicted testimony, plaintiff then put on his brakes hard and "veered" off to the right as far as he could without hitting the rock wall and *it was not until "just as I seen I was going to miss this car I looked in my rear view mirror* to see *and at that time I seen him* [the defendant] swerve to the right. And that is when he ran into me."

It follows that the majority is incorrect in stating that when plaintiff *previously* "suddenly slowed his vehicle" he then and at that time knew that defendant was at that very same time turning into the outside lane to avoid hitting the "phantom car." It also follows that in the absence of such knowledge at the time that plaintiff slowed down there was no evidence whatever from which the jury could properly find that plaintiff was negligent in slowing down and "veering"

to the right in an attempt to miss a head-on collision with the "phantom car."

A. *Admissions by defendant's counsel.*

This analysis of the evidence is also supported by the admissions of defendant's counsel at the time of trial. Indeed, counsel for defendant at the time of trial, although pleading contributory negligence as a defense, as much as admitted that plaintiff was not negligent, but that in slowing down and swerving to the right he did no more than to react normally to the emergency of avoiding a head-on collision. Thus, in speaking of the plaintiff, defendant's counsel made the following judicial admission when he told the jury:

"* * * He reacted the way anybody would if they saw a car coming head-on. And he doesn't know, of course, how far Mr. Mengore was in back of the other lane. There isn't any evidence on that. * * *"

It follows that the sole and only "fact" found by the majority as a basis for a finding of contributory negligence was directly contradicted by defendant's own counsel, who conceded that there was no such evidence. Indeed, the argument by defendant's counsel to the jury was not that plaintiff was guilty of contributory negligence, but that defendant was also not negligent despite the fact that he admitted that in trying to "catch up" with plaintiff (who was driving between 45 and 50 miles per hour), defendant was driving at between 60 and 65 miles per hour on a highway with a posted speed of 55 miles per hour, thus providing evidence from which the jury could have found that he was negligent.[4]

---

[4] In his opening statement to the jury, and in describing what

In this state of the record, and in the absence of any evidence from which the jury could properly find that plaintiff was guilty of contributory negligence, it was clearly error to deny plaintiff's motion to strike those allegations from defendant's answer and to withdraw that issue from the jury.

---

both plaintiff and defendant described as the "phantom car," defendant's counsel in referring to the plaintiff, Mr. Berg, said:

"* * *[I]t was right directly at the front of his automobile. And, of course, he instantly reacted. And *he had two options, really.* He could swerve over into the wrong lane of travel, which I think it not exactly recommended. So, he took the cut-off to the right, hit the brakes. And as Mr. Berg's car *slid to a stop,* Mr. Mengore's car also trying to stop, did collide with the rear of it and was pushed over here toward the embankment. I think there was a cement wall over there.

"* * * * *

"We have alleged that Mr. Berg was guilty of contributory negligence in *anchoring his car* out in that roadway. You may find that is not true. It's our position simply *if one of them were negligent they both were.* The fact of the matter is *you will probably conclude neither one was.*" (Emphasis added)

As the evidence came in, however, there was not even testimony that plaintiff "slid to a stop" or was "anchored" in the roadway. On the contrary, defendant did not disagree with plaintiff's testimony that although he braked hard, he did not lose control or slide and that he was still moving at least five miles ·per hour when he was hit by defendant.

Indeed, in his closing argument to the jury, defendant's counsel made no argument that there were any facts from which the jury could find that plaintiff was negligent, much less that he knew at the time when he swerved to the right and slowed down, that defendant was then "turning to the outside lane," as suggested by the majority. Instead, he argued as follows:

"* * * If you find that Mr. Berg contributed to this accident by his conduct, then he can't recover. *It may well be far more likely and more reasonable that you will conclude that neither one of these young men was causally negligent* in bringing this accident about. * * * This car is coming head-on at them. If that isn't an emergency situation I don't know how in the world you would ever create one. *These people both reacted as best they could under the circumstances.* * * *" (Emphasis added)

Indeed, for the majority to hold to the contrary is to hold that in any rear-end collision case the defendant need only allege contributory negligence and will then be entitled to have that defense submitted to the jury, despite the total absence of any evidence of plaintiff's actual negligence. I cannot believe that this was the result intended by the majority in *Miller v. Harder, supra,* much less by this court in subsequent decisions, including *Hess v. Larson, supra,* in which this court specifically referred to the requirement of "evidence upon which a jury can base a determination."

B. *This was at least "a most exceptional case."*

Even if the majority is correct in its interpretation of *Miller* and *Hess,* the majority concedes that there may be an "exceptional case" in which this court may properly "determine questions of negligence as a matter of law."

As previously stated, the majority refers to our decision in *Stevenson v. Hole, supra,* as such an "exceptional case." In that case the question was whether plaintiff failed to give a signal before slowing or turning. Nevertheless, we held, without reference to either *Miller* or *Hess,* that it was not error in that rear-end collision case to refuse to submit contributory negligence to the jury. This is a far more "exceptional case" than that presented in *Stevenson v. Hole, supra,* in which two cars approached an intersection in a normal manner and in which no "emergency" was presented to either party.

It is also significant that in neither *Miller* nor *Hess* was there any "emergency," as conceded by defendant's counsel to exist in this case. Regardless of whether defendant could claim the benefit of the

"emergency" rule when "closing" on plaintiff at a speed of from 60 to 65 miles per hour on a highway posted for 55 miles per hour, there is no suggestion whatever that plaintiff (driving at between 45 and 50 miles per hour) had any part in the creation of the emergency situation which confronted him when, upon starting around the curve, he was confronted by another car coming at him in his own lane of traffic.

Surely this case, in which plaintiff's frantic efforts to avoid the emergency of a head-on collision have been characterized by defendant's own counsel as a reaction in "the way anybody would react if they saw a car coming head on," fully qualifies as a "most exceptional case." As such, and in the absence of any evidence of contributory negligence, this case is one which requires that this court hold, as a matter of law, that it was error for the trial court to deny plaintiff's motion to withdraw from the jury the defense of contributory negligence.

For these reasons I must respectfully dissent.

HOLMAN, J., and HOWELL, J., join in this dissent.