Argued July 14, reversed and remanded October 24, 1978

GRAY, *Appellant,*
*v.*
LAHL et al, *Respondents.*
(TC A 7603 03638, SC 25363)
585 P2d 664

Graham Walker, Portland, argued the cause for appellant. With him on the briefs was Robert Lee Olson, Portland.

Larry A. Brisbee, Hillsboro, argued the cause and filed the brief for respondents.

Before Holman, Presiding Justice, and Tongue, Bryson and Lent, Justices.

TONGUE, J.

Bryson, J., dissenting.

**TONGUE, J.**

This is an action for damages for personal injuries resulting from a rear-end automobile collision. Plaintiff's complaint alleged that defendants were negligent with respect to control, as well as lookout and speed. Defendants' answer was a general denial. At the conclusion of the trial plaintiff moved for a directed verdict on the issue of liability. That motion was denied. The jury returned a verdict in favor of defendants. Plaintiff appeals from the judgment on that verdict.

Plaintiff contends that this is one of those "rare cases" in which plaintiff was entitled to a directed verdict on the issue of liability because the defendant driver admitted that the brakes of the truck were "spongy" at a point two blocks before "rear-ending" plaintiff's car and that he was then unable to stop the truck; that having thus admitted that the brakes of the truck were defective, defendants had the burden to show that he nevertheless acted reasonably in driving a truck with defective brakes in that the failure of the brakes was sudden, unexpected and without prior warning and that, having failed to do so, it follows that defendants were negligent as a matter of law. Because this is an appeal from the denial of a motion by a plaintiff for a directed verdict, we must accept the evidence most favorable to the defendants.

It appears from the testimony of defendant Siler on direct examination that defendants Lahl were engaged in the operation of a "sanitary service" in Gresham. On the morning of the accident defendant Siler, an employee, was required to drive a truck from the "station" to the dump. He "got in the truck, checked the brakes, lights * * * the load, the tires and * * * proceeded to the dump." In the course of proceeding to the dump he drove south on 82nd Avenue in Portland, traveling on the "inside lane."

As defendant Siler approached the intersection of 82nd Avenue and Sunnyside Road, the light turned

[ 113 ]

yellow. There were two cars ahead of him. He was then some 350 feet from the point of impact. He testified that "I applied my brakes and they were spongy. In other words, they wouldn't stop. * * * I was looking for a place to escape."

Defendant Siler then looked in his rearview mirror "because I was about to go into the [outside] lane" and saw plaintiff's car coming up behind him. He then "tried my emergency brake and shifted into first gear" to "slow me as fast as I could." He then looked in his rearview mirror again and could no longer see plaintiff's car, but testified that "All of a sudden he reappeared in front of me, * * * maybe three or four feet in front of me. I turned into that lane and bumped him." At that time the truck was going about four or five miles an hour and plaintiff's car was going approximately three to four miles per hour, according to defendant Siler. Plaintiff's attorney did not cross-examine.

In *Barnum v. Williams,* 264 Or 71, 78-79, 504 P2d 122 (1972), we stated the following rule:

> "We consider the present state of the law to be that if a party is in violation of a motor vehicle statute, such a party is negligent as a matter of law unless such party introduces evidence from which the trier of the fact could find that the party was acting as a reasonably prudent person under the circumstances. * * *

> "Another way of stating this is that the violation of a motor vehicle statute creates a presumption of negligence. When the evidence establishes that a party has violated a motor vehicle statute, such a party has the burden of producing evidence that, nevertheless, he was acting reasonably. Without such evidence the party is negligent as a matter of law. *Raz v. Mills,* 231 Or 220, 226-227, 372 P2d 955 (1962).

> "If the party having such burden produces no evidence of reasonable conduct or the court finds the evidence produced is insufficient to prove reasonable conduct, the court must find the party negligent as a matter of law. If the party produces evidence which the court determines raises a question of fact whether the

party acted reasonably, despite violation of the statute, then, the question of the party's negligence is for the jury."

In *Weitzel v. Wingard,* 274 Or 185, 546 P2d 121 (1976), this court applied the rules as stated in *Barnum* in a case involving the operation of a defective motor vehicle, as in this case. In *Weitzel* defendant testified that the accident occurred when "something just went out from underneath [his] car" as he was driving "no more than 30 miles an hour"; that what "broke loose" was "the rear end of the car someplace"; that the car then went out of control; that defendant was unable to either steer the car or "to slow it down or stop it"; that after "things broke loose, things started dragging," and he "couldn't get any response from [the brakes] * * *."

On these facts a majority of this court held in *Weitzel* that the trial court did not err in denying plaintiff's motion for a directed verdict on the issue of liability. In so holding, however, and after quoting (at 185) with approval from its previous decision in *Barnum,* in which defendant's car had gone "over the center line," striking another vehicle, this court said (at 186) that:

> "We compared the situation in *Barnum* to a presumption of negligence which becomes *conclusive* in the absence of a legitimate excuse for the statutory violation, * * *.
>
> "The presumption becomes conclusive, in the absence of explanation, because the violation of a statute is involved.
>
> "In the present case defendant gave as an excuse for his being on the wrong side of the road the defective condition of his vehicle. This is an adequate excuse only if he was not at fault for its defective condition. * * *"

This court then (at 184-85) distinguished between the operation of a vehicle "the condition of which was in violation of a statute" from what the court described as a "non-statutory defect." The court said (at 190) that if the defendant had been "operating a vehicle the

[ 115 ]

condition of which was in violation of a statute," there would have been "a presumption of negligence upon defendant for the defective condition of his vehicle which becomes conclusive in the absence of his testimony that he took due care of it." This court went on to hold, however, that because the defect of the vehicle in that case was a "non-statutory defect" (i.e., "something" "broke loose" from the rear end of the car and "things started dragging," causing it to go "out of control") no such conclusive presumption arose.

Unlike *Weitzel,* this case does not involve a "non-statutory defect." Instead, this case involves the operation of a loaded truck with defective brakes. ORS 483.444 provides:

"(1) Every motor vehicle other than a motorcycle when operated upon a highway shall be equipped with brakes adequate to control the movememt of and to stop and to hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

"* * * * *

"(4) All brakes shall be maintained in good working order * * *."

Defendant Siler admitted that the brakes of the truck were not "adequate to control the movement of and to stop" that vehicle, as required by the statute. It follows from this admitted statutory violation, as we said in *Weitzel,* that there was "a presumption of negligence upon defendant[s] for the defective condition of [their] vehicle which [became] conclusive in the absence of testimony that [they] took due care of it." In other words, we hold that a defendant who denies that he was negligent in failing to keep his vehicle under control, but admits operating his vehicle with defective brakes in violation of the statute, has the burden

[ 116 ]

to offer testimony which, if believed, is sufficient to show that he was not negligent. In order to do so, defendant must show a "legitimate excuse" for such a statutory violation, as by testimony that the failure of the brakes was sudden, unexpected and without previous warning.

There was no such testimony in this case. Defendant Siler testified that the brakes were "spongy" and "wouldn't stop" when he applied them some 350 feet from the point of impact. It is true that he also testified that he "checked" the brakes before leaving the "station" in Gresham. Even if it can be inferred that the brakes were not "spongy" at that time, there was no testimony that the brakes were not "spongy," but operated properly, on subsequent applications of the brakes between the time of leaving the "station" in Gresham and the time of the accident in Portland.

■■ On this state of the record, we hold that defendants failed to offer testimony from which a jury could properly find that when the brakes failed to operate properly at the time of the accident such a failure was unexpected and without previous warning. In short, defendants failed to offer any "legitimate excuse" for their admitted operation of a loaded truck with defective brakes, in violation of ORS 483.444.[1]

It follows that this is a case in which, as stated in *Weitzel* (at 190):

> "The presumption [of defendant's negligence] becomes conclusive, in the absence of explanation, because the violation of a statute is involved."

There being no claim of contributory negligence, it also follows that the trial court erred in denying

---

[1]The dissent also points out that plaintiff's complaint alleged only "speed, lookout and control" and did not allege that the brakes were defective and that plaintiff also did not cross-examine defendant Siler. Plaintiff was under no obligation to do either. When the defendant sought to excuse his lack of control upon the ground that his brakes were defective it was then his burden to come forward with evidence that the failure of his brakes was sudden, unexpected and without prior warning.

plaintiff's motion for a directed verdict on the issue of liability.[2]

Reversed and remanded.

**BRYSON, J.,** dissenting.

The majority opinion would reverse the trial court for failing to grant plaintiff a directed verdict on the issue of liability and in submitting the case to the jury on all of the facts.

At the outset, it should be noted that plaintiff did not allege that defendant was negligent in operating his truck on a highway not equipped with brakes adequate to control the movement of and to stop the vehicle. Rather, he only alleged the defendant was negligent as to speed, lookout, and control.

The evidence shows that when the defendant truck driver, Siler, was 350 feet from the intersection with a stop light and where the point of impact occurred, he attempted to apply his brakes and discovered "they were spongy." Defendant driver had driven another truck on that particular morning and was driving this truck to the dump site. He testified:

"A   I got in the truck, checked the brakes, lights and you know, the load, the tires and so on, proceeded to the dump.

"* * * * *.

"Q   What is the designated speed through that area?
"A   Fifty miles per hour.

"* * * * *.

"A   The light turned yellow and there were two cars in front of me. I applied my brakes and they were spongy. In other words, they wouldn't stop. They were —

---

[2]Defendants rely primarily upon our decision in *Pitcher v. Leathers,* 270 Or 666, 529 P2d 381 (1974), and state that "the issues seem to be the same" as those in that case and that to rule in favor of plaintiff "this court will necessarily have to reverse its holding in *Pitcher v. Leathers.*" In *Pitcher,* however, no vehicle defect was involved, much less the driving of a vehicle with defective brakes in violation of a statute, as in this case.

I was — had them on, you know, and I couldn't stop. I was looking for a place of escape.

"* * * * *.

"A * * * I checked my right rearview mirror and because I was about to go into that lane. There was a car coming up behind me, which was after I found out, it was Mr. Gray. Ah, I looked to my left to the turn lane and I was still rolling at the time. The two cars in front of me, one turned into the left lane and one stayed in front of me, so I couldn't go there.

"* * * * *.

"A * * * I tried my emergency brake and shifted into first gear, the lower gear possible you could —

"* * * * *

"A * * * All of a sudden he [plaintiff Gray] reappeared in front of me, which maybe three or four feet in front of me. I turned into that lane and bumped him."

The defendant's truck was going no more than five miles per hour, or approximately one mile per hour faster than the plaintiff's car.

After the accident, defendant driver testified the following occurred:

"A Then he rolled his car into the driveway and I pulled in behind him. We got out. I checked him out. I said, 'Are you all right?' He said, 'Yeah.' We went around to the back of the car [plaintiff's car]. We looked at the car. There was marks on the bumper, really wasn't any damage at all."

When both parties rested, the following occurred:

"[PLAINTIFF'S COUNSEL]: Your Honor, the plaintiff will move for a directed verdict on liability because the evidence showed that defendant just went down the road and (sic) one slight explanation, ran into the rear of this car. He was there to be seen.

"THE COURT: You didn't have the courage to ask him that, Mr. Walker. He said his brakes became spongy and he put on his emergency brake. But you said something in your opening statement to the effect that he had a spongy brake several blocks before the accident, but you didn't ask him that.

[ 119 ]

"[PLAINTIFF'S COUNSEL]: I wish to point out that I have some law that if you are going to use defective brakes in a defensive manner such as he is, then you must come forward and show it was sudden and unexpected. There is no testimony this was sudden. He just said it was spongy, didn't say it hadn't been, was or wasn't. I didn't want to question him.

"THE COURT: I know you didn't, Mr. Walker.

"[PLAINTIFF'S COUNSEL]: There is no evidence. He has an affirmative duty to show that was without warning. There was no testimony this was without warning, and I figured any question I asked him was probably going to encourage him to go into this which might or might not —

"THE COURT: I am going to deny your motion . . . ."

From the evidence just reviewed, it is clear that the truck driver checked the truck when he started out, and he found that his brakes were spongy and would not stop him when he was approaching the point of impact. There is no evidence that his brakes failed prior to this time, and plaintiff chose not to cross-examine the truck driver. This left an issue for the jury on speed, lookout and control. In *Miller v. Harder,* 240 Or 418, 420-21, 402 P2d 84 (1965), we reversed *Lehr v. Gresham Berry Growers et al,* 231 Or 202, 372 P2d 488 (1962), stating:

"Experience has taught that for the court to attempt to measure the varying facts in each of these cases against the pattern of facts in the *Lehr* case and to then decide as a matter of law how well each new case fits the pattern is unsound, if not unworkable. The deviation from the peculiar facts of *Lehr* change with each case, and we have concluded that the court is actually doing the jury work of matching facts against the reasonable man test.

"In addition, the complexities of traffic conditions range from two or three cars following in a single lane of travel to bumper to bumper traffic in multi-lane streets and highways; from highway traffic uncontrolled by signals to urban controlled traffic. In these rear end collision cases whether or not a statutory rule such as following too closely, the giving of a signal, or speed has

been violated in a given case should be left for the jury under proper instruction. This is equally true of the non-statutory duties. These considerations have caused us to reach the conclusion that we should follow the earlier cases cited in the dissenting opinion in the *Lehr* case and submit these cases to the jury."

In *Pitcher v. Leathers,* 270 Or 666, 529 P2d 381 (1974), we stated, at page 670:

"Since *Miller v. Harder* this court has again followed the rule that, except in rare cases, the issues of negligence, causation and contributory negligence in automobile collision cases are questions for the jury. * * *." See numerous cases cited, including those in footnote 1.

We again reiterated this rule in *Parks v. Smith,* 276 Or 557, 560, 556 P2d 114 (1976).

The only issues in the pleadings in this case were lookout, control, and speed. The plaintiff chose not to cross-examine defendant Siler. Accordingly, the trial court did not err in denying plaintiff's motion for a directed verdict on liability. This is a good case to refer to the following language in *Pitcher v. Leathers,* supra at 670:

"Since we learned the hard way with *Lehr,* we do not intend to make the same mistake again. We will, as we did prior to *Lehr,* hold that issues of negligence and causation, including questions of speed, lookout and control, are for the jury." (Footnote omitted.)

The majority opinion in this case can do nothing but confuse the trial courts and the Court of Appeals when confronted with this problem. I would affirm.