Argued November 4, reversed and dismissed December 19, 1974

PATTLE, *Respondent, v.* WILDISH
CONSTRUCTION COMPANY ET AL, *Appellant.*
529 P2d 924

*William G. Wheatley,* Eugene, argued the cause for appellant. With him on the briefs were Jaqua & Wheatley, Eugene.

*Roy Dwyer* of Dwyer & Jensen, P. C., Eugene, argued the cause and filed the brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

**TONGUE, J.**

This is an action for damages for personal injuries sustained in an automobile accident. Plaintiff's automobile was stopped at a stop sign when defendant's truck went out of control due to the breaking of the idler arm shaft in its steering mechanism and collided with plaintiff's car.

Plaintiff's complaint alleged, in separate counts, both general negligence based upon res ipsa loquitur and specific negligent conduct in that defendant failed to properly maintain the truck or to inspect or replace the idler arm shaft. Defendant's answer denied that this is a res ipsa loquitur case and also denied the specific allegations of negligence. The case was tried to the court, without a jury. The court found that plaintiff was injured as a result of defendant's negligence, apparently upon the basis of res ipsa loquitur, and entered a judgment for $35,603, in favor of plaintiff. Defendant appeals.

The truck was a 1964 Ford dump truck with a gross capacity of 50,000 pounds. At the time of the accident, on June 16, 1969, it had been driven 131,643 miles. According to the testimony of its driver, as he was proceeding around a curve the idler arm shaft of the steering assembly broke, causing the truck to go out of control.

This truck was one of a fleet of 20 trucks. There was testimony that the steering mechanisms of these trucks, including these shafts, are under heavy pressure, particularly when the trucks are fully loaded, and that shafts have broken on four other trucks, including one before this accident. The circumstances

of these incidents do not appear, except that on one occasion shortly before this accident a shaft had broken on another truck when its driver backed it into a ditch and was trying to get out, under circumstances which may have put unusual "stress" on that shaft.

There was also evidence that this truck had been specially serviced at the driver's request 15 times during the two months prior to the accident, including a "driver report" about six weeks before the accident stating that steering on the truck was "loose." There was testimony, however, that "loose steering" was not an indication that this shaft was about to break and that there would be no warning before the breaking of such a shaft.

There was evidence that this truck was overloaded in that it had a gross weight of 70,000 pounds at the time of the accident. There was no evidence, however, that the steering mechanism was subjected to any extraordinary pressure at the time of the accident or that overloading was the cause of the accident. Neither was this overloading alleged as negligence. There was also no direct evidence of any lack of lubrication or other improper maintenance, at least during the six months before the accident.

The shaft in question was approximately one inch in diameter and was located in such a manner that only its end or "tip" was visible. According to the testimony, it would have required approximately two hours for mechanics to remove the shaft for inspection and that even then a "magnaflux" process would be required to reveal any latent defects. This particular shaft had never been previously removed for inspection.

Defendant produced records and testimony to show that for the six months prior to the accident the truck was serviced for lubrication at intervals which ranged from 1,020 to 1,770 miles and that when this was done a visual inspection was made of the steering mechanism. Previous maintenance records were not produced. Neither were the mechanics who repaired the truck after the accident produced as witnesses and the broken shaft was not produced, but only a new duplicate shaft.

After the accident a new shaft was installed and also a new "bracket" to hold the shaft. There was some indication that the original "shaft" and "bracket" were not properly designed for the amount of pressure and stress placed upon those parts.

Plaintiff's primary contention is that this is a proper case for application of "res ipsa loquitur." We have previously held in *Brannon v. Wood,* 251 Or 349, 355, 444 P2d 558 (1968), that the elements which must be present for the doctrine to be available are:

> " '* * * (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. * * *' Prosser, Law of Torts (2d ed) 201-202, § 42."

See also *St. Paul Fire & Mar. Ins. v. Watkins,* 261 Or 473, 476, 495 P2d 265 (1972); *Mayor v. Dowsett,* 240 Or 196, 214, 400 P2d 234 (1965); *Kaufman v. Fisher,* 230 Or 626, 634, 371 P2d 948 (1962); and 2 Harper and James, The Law of Torts 1081, § 19.6 (1956).

We may assume, for the purpose of this case, that the first and third requirements are satisfied by the

evidence and that the principal issue relates to the second requirement, that of control by the defendant.

■ It is well established in Oregon that the requirement of control by the defendant does not mean that defendant's control must have been exclusive in terms of physical possession. *Gow v. Multnomah Hotel, Inc.,* 191 Or 45, 55-65, 224 P2d 552, 228 P2d 791 (1951); *Powell v. Moore,* 228 Or 255, 264-68, 364 P2d 1094 (1961); and *Denny v. Warren,* 239 Or 401, 406-07, 398 P2d 123 (1964). According to 2 Harper and James, *supra* at 1085, § 19.7:

> "The second requirement for res ipsa loquitur is commonly stated in terms of defendant's exclusive control of the injuring agency. The logical basis for this requirement is simply that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another. * * *"

This view of the requirement of control by defendant has been adopted in Oregon. In *Denny v. Warren, supra,* defendant installed a dishwasher in a home after which a leak developed in a brass coupling. The court said (at 404) that there were three possible causes of the leak: (1) that the plumber carefully installed a coupling which was defective, but with a defect of such a nature that it could not have been detected in the exercise of ordinary care; (2) that the plumber negligently installed an obviously defective coupling; or (3) that the plumber negligently installed a sound coupling. The court then said (at 405):

> "* * * [I]n order to apply *res ipsa loquitur,* it must be possible to say * * * that it is more probable than not that the person whose negligence caused the injury was the defendant and not some third party, e.g., in the case before us, a remote supplier."

The court went on in that case to weigh the probabilities and concluded (at 407) that "there is little, if any, more evidence tending to show that the negligence of the defendant caused the injury than that the negligence of someone else caused it."

To the same effect, see *Rambo v. Groshong,* 239 Or 520, 522, 399 P2d 21 (1965) ; and *Phillipsen v. Hunt,* 129 Or 242, 245-46, 276 P 255 (1929). Cf. *St. Paul Fire & Mar. Ins. v. Watkins, supra* at 478.

■■ The evidence must be such as to provide a rational basis upon which the trier of the fact can find that the negligence which caused the injury was *probably* that of defendant rather than that of someone else. It is a question of law for the court, however, to determine whether the evidence in a given case is sufficient to provide such a basis so as to enable the trier of the fact to properly find that the negligence which caused the injury was probably that of the defendant, rather than that of some third party.

As stated in *Kaufman v. Fisher, supra* at 639-40:

> "* * * The determination of where the probabilities lie must, ordinarily, be made upon the basis of past experience as it is seen and appraised by the court. 'These are the judgments of "common sense." ' 2 Harper & James, Torts § 15.2, p. 879 (1956).
>
> "The process of judgment involves an examination of the inventory of possible causes for an accident of the kind in question. Initially this inquiry is made by the trial judge in determining whether the case should be submitted to the jury. Upon the basis of his understanding of how accidents of the kind in question happen he decides where the probabilities lie. If he decides that the probabilities of non-negligent causes are as great or greater than the probability of a negligent cause attributable to

the defendant he withdraws the case from the jury. * * * [If] the probability of the defendant's negligence is greater than the probability of other causes, the jury is entitled to reach the same conclusion, although it is not required to do so."

We also recognize, as stated in 2 Harper and James, *supra* at 1087-088, § 19.7:

"* * * [W]here the person in control of the instrument at the time of injury is sued, the possibility that some predecessor in control or some intermeddler caused the defect may still exist, though it may not be strong enough to destroy the needed inference and in any event it will not help a defendant who had a duty to inspect if the defect was probably discoverable and existed long enough to be found."

■ This is not a case of an automobile or truck going out of control for wholly unexplained reasons, as in *Kaufman v. Fisher, supra.* In this case it appeared from plaintiff's complaint and evidence offered by plaintiff that this truck went out of control because the idler arm shaft broke. Although this does not necessarily eliminate the possible application of the rule of res ipsa loquitur, it "limits the inquiry to the cause designated." See *Brannon v. Wood, supra* at 357.

The question to be decided in this case is whether there was sufficient evidence to provide a rational basis from which the trier of the fact could properly find that it was more probable that the idler arm shaft on this truck broke because of negligence of the defendant than that it broke because it was defective when the truck was originally purchased or for other possible reasons for which defendant had no responsibility.

■ After a careful review of the evidence in this case

it is our judgment that the evidence was not such as to provide a rational basis for such a finding of fact. There was evidence that the truck was a 1964 model; that the accident happened in 1969; and that the truck had been driven 131,643 miles. It appeared, however, that there would have been no advance warning before the idler arm shaft broke; that the truck was lubricated periodically, at which times a visual inspection was made of the steering mechanism; that only the end of the idler arm shaft was visible on such an inspection, and that it would have taken approximately two hours to disassemble that part of the steering mechanism so as to make possible the removal of that shaft for analysis for latent defects by the "magnaflux" process.

Under these facts, and in the exercise of the duty imposed upon the court, as a matter of law in res ipsa cases, we do not believe that the evidence was sufficient to provide a rational basis upon which the trier of the fact could properly find that any pre-existing defect in this idler arm shaft should have been discovered by defendant in the exercise of reasonable care.

We recognize that there was some evidence that the truck was overloaded. This was not alleged as negligence, however, and there was little, if any, evidence that it was the cause of the breaking of the idler arm shaft. Indeed, the evidence was to the contrary.

■ The fact that defendant did not produce maintenance records other than for the six month period before the accident and did not produce either the broken shaft itself or the mechanics who repaired the truck after the accident was also not sufficient, in our opinion, either separately or together with the other evidence, to provide a rational basis upon which the

trier of the fact could properly find that it was more probable that this shaft broke because of any negligence by the defendant than that it broke because of fault by the manufacturer of the truck.

■ Plaintiff points out that in another action, involving plaintiff's claim for property damage to her automobile arising from the same accident, the Ford Motor Company had been joined as a defendant and that the jury in that case returned a verdict in favor of Ford. This defendant, however, was not a party to that case and we do not know what the verdict of the jury would have been in such an event. We do not believe that the verdict in favor of Ford in that other case has any proper bearing upon the question whether this was a proper case for application of res ipsa loquitur and plaintiff has cited no authorities to the contrary.

Because this case was tried before the court, without a jury, the problem of procedure in deciding the application of the rule of res ipsa loquitur to the facts of this case was somewhat different than in a case tried before a jury. See 2 Harper and James, *supra,* 1099-1107, §§ 19.11-19.12. Thus, defendant's motion for nonsuit at the end of plaintiff's opening case was withdrawn. See *Karoblis v. Liebert,* 263 Or 64, 501 P2d 315 (1972). It appears, however, that most of the evidence relating to the broken idler arm shaft was introduced as a part of plaintiff's case by testimony of the shop "coordinator," an experienced mechanic, who was responsible for maintenance of the truck.

For these reasons, the judgment of the trial court must be reversed and the case must be dismissed.[1]

---

[1] This disposition of the case makes it unnecessary to decide whether the trial court erred in finding that the defendant

Reversed.

Wildish Construction Company and the Wildish Sand and Gravel Company "should be treated as one corporate entity," so as to permit the filing by plaintiff of an amended complaint naming Wildish Sand and Gravel Company as the defendant, to replace Wildish Construction Company, after the expiration of the two year statute of limitations that would otherwise have barred an action against the defendant.