ANNA M. WEITZEL, *Appellant,*
*v.*
WINGARD, *Respondent.*

FLOYD WEITZEL, *Appellant,*
*v.*
WINGARD, *Respondent.*

546 P2d 121

*Edward V. O'Reilly,* Eugene, argued the cause and filed briefs for appellants.

*Paul D. Clayton,* Eugene, argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richards & Fraser, Eugene.

HOLMAN, J.

**HOLMAN, J.**

This appeal involves two actions for damages arising out of a single automobile accident. Anna M. Weitzel filed an action for personal injuries and her husband filed one for loss of consortium. The cases were consolidated for both trial and appeal. A judgment for defendant pursuant to a jury verdict was entered in each case.

Defendant's vehicle crossed the center line of a street and hit a vehicle which Mrs. Weitzel was operating in the opposite direction. Plaintiffs' first assignment of error is the trial court's failure to rule as a matter of law that defendant was negligent in operating his vehicle on the wrong side of the highway in violation of ORS 483.302(1). Defendant testified as follows:

"Q  Tell me just how the accident happened.

"A  Well, I was driving south on Willamette Street, and I wasn't speeding. I wasn't doing, I know, no more than 30 miles an hour. And as I was driving down the street, something just went out from underneath the car. Just—it was a shock. And the only thing I could do is I went to the right, hit the curb in the right-hand lane and went across the road in front of an oncoming car, which was the plaintiffs. All I could do was hold on and ride it out.

"Q  What was it that broke loose?

"A  The rear end of the car someplace. I don't know. I'm not a mechanic. So, I couldn't really explain the correct—what it would be. I wouldn't want to venture a guess at it.

"Q  What happened to the handling of the car when this broke loose?

"A  Well, it was kind of erratic. Like I said, it went to the right, hit the curb and just took to the left (sic), and all I could do is hang on.

"Q  Were you able to steer the car?

"A  No, sir, I wasn't.

"Q  Were you able to slow it down or stop it?

"A  No. I tried to, but it was impossible.

"* * * * *.

[ 187 ]

"Q   Was there anything you could have done by steering to have missed the impact you had with plaintiff's car?

"A   No, sir.

"* * * * *.

"Q   Did your car slow down at all after the things broke loose and you went out of control?

"A   It did, because it hit—after things broke loose, things started dragging, and it did slow the car down, but to what extent of speed, I couldn't really say.

"* * * * *.

"Q   —did anything else happen as far as the brakes were concerned?

"A   I couldn't get any response from them after that broke loose.

"* * * * *.

"Q   Did you just hang on the steering wheel or did you attempt to steer—

"A   While I was hanging on, I was attempting to steer at the same time. I was trying to steer it and still hang on at the same time.

"Q   Well, is it your version that you couldn't turn, that the wheels would not turn?

"A   They wouldn't. They wouldn't respond very well, because what was dragging underneath was more or less directing the car. I was trying to steer and hang on to the steering wheel at the same time and ride it out, and, as I recall, I couldn't get any response to any particular direction it was going to go."

Plaintiffs argue that because defendant made no effort to have his vehicle inspected to find out which part, if any, had malfunctioned underneath the vehicle, "there was no competent evidence" "to establish a reason for his [defendant's] vehicle being in the wrong lane of traffic." Plaintiffs further argue:

"The ability to determine what had in fact happened to defendant's vehicle prior to the collision was solely with defendant. It appears unreasonable that a person involved in a head-on collision resulting in injuries and hospitalization of the other party would not at least check the vehicle later to determine what may have happened to cause him to lose control."

[ 188 ]

After much vacillation, this court, in *Barnum v. Williams,* 264 Or 71, 78-79, 504 P2d 122 (1972), finally arrived at the following rule for such a situation:

"We consider the present state of the law to be that if a party is in violation of a motor vehicle statute, such a party is negligent as a matter of law unless such party introduces evidence from which the trier of fact could find that the party was acting as a reasonably prudent person under the circumstances. * * *.

"Another way of stating this is that the violation of a motor vehicle statute creates a presumption of negligence. When the evidence establishes that a party has violated a motor vehicle statute, such a party has the burden of producing evidence that, nevertheless, he was acting reasonably. Without such evidence the party is negligent as a matter of law [citation omitted].

"If the party having such burden produces no evidence of reasonable conduct or the court finds the evidence produced is insufficient to prove reasonable conduct, the court must find the party negligent as a matter of law. If the party produces evidence which the court determines raises a question of fact whether the party acted reasonably, despite violation of the statute, then, the question of the party's negligence is one for the jury."

In effect, plaintiffs contend that the trial court erred in failing to find that defendant's evidence was insufficient as a matter of law to prove reasonable conduct in rebuttal of the presumption of negligence.

It is our opinion that the evidence raises a question of fact whether defendant, despite his violation of the statute, acted reasonably under the circumstances. Plaintiffs contend no question of fact is presented because defendant failed to offer evidence of the condition of his vehicle after the accident in verification of his testimony that his vehicle became uncontrollable due to defect. Such failure by defendant may make his testimony of defect less credible and raise inferences concerning his legal responsibility for the defect, but these are for the jury. His testimony was sufficient to justify a jury in finding that he ended up in the oppo-

site lane of travel without any fault on his part in operating his vehicle.

Had plaintiffs alleged the defendant was negligent in that he was operating his vehicle in violation of a statute requiring his vehicle to be in a specified *condition* (such as the condition of brakes) and had plaintiffs proved or defendant admitted the defect, defendant could not excuse such violation of the statute by evidence of the reasonable manner in which he operated his vehicle. In such a situation plaintiffs' present contention would be valid.

We compared the situation in *Barnum* to a presumption of negligence which becomes *conclusive* in the absence of a legitimate excuse for the statutory violation, for we said:

> "Another way of stating this is that the violation of a motor vehicle statute creates a presumption of negligence. When the evidence establishes that a party has violated a motor vehicle statute, such a party has the burden of producing evidence that, nevertheless, he was acting reasonably. Without such evidence the party is negligent as a matter of law. * * *."

The presumption becomes conclusive, in the absence of explanation, because the violation of a statute is involved.

In the present case defendant gave as an excuse for his being on the wrong side of the road the defective condition of his vehicle. This is an adequate excuse only if he was not at fault for its defective condition. The dissent treats defendant as if he had been operating a vehicle the condition of which was in violation of a statute; it, in effect, places a presumption of negligence upon defendant for the defective condition of his vehicle which becomes conclusive in the absence of his testimony that he took due care of it.

Because the actual allegation of negligence against defendant concerns his being on the wrong side of the road, which involves the violation of a statute, the dissent, in evaluating his excuse, attaches the same level

of responsibility upon defendant for the defective condition of his vehicle as it does to his being on the wrong side of the road, despite the condition of his vehicle not being claimed to have violated a statute. The dissent never explains how the level of legal responsibility for violation of the statute requiring one to stay on his own side of the road transports itself over to his non-statutory common law responsibility for the condition of his vehicle.

We do not believe the dissent is contending that anyone who is charged with common law negligence for driving a vehicle with a non-statutory defect is negligent as a matter of law if he admits the defect and denies his negligence but fails to testify concerning his diligence in the care of his vehicle. If the dissent is not contending this, a legitimate question, then, is, "If a person is not negligent as a matter of law, in the absence of an explanation, for an admitted non-statutory defect in his vehicle when directly charged with such negligence, why does he so become when his responsibility for the defectiveness of his vehicle comes into question as his excuse for being on the wrong side of the road?" It is no answer to say that his being on the wrong side of the road is a violation of a statutory duty. Initially in question is defendant's responsibility for the condition of his vehicle, and it is only after resolving this question that a decision can be made regarding whether his excuse for being on the wrong side of the road is adequate.[1]

In an attempt to bolster up its rationale, the dissent quotes language from cases from other jurisdictions and from 2 Blashfield, Automobile Law and Practice 459-60, § 107.3, which states the common law rule to

[1]The dissent sees the presumption of negligence which arises from being on the wrong side of the road as applying not only to the manner in which the defendant *operated* his vehicle, but to the *care* he took of it as well. On the other hand, the majority sees the presumption of negligence which arises from being on the wrong side of the road as applying to the *operation* of his vehicle (it is an operational statute that has been violated) but not to the vehicle's care, which the majority believes is determined by the usual rules applicable to non-statutory defects of vehicles.

the effect that the owner or driver of a motor vehicle owes a duty to others of reasonable care to discover defects in his vehicle. Not one of the cases concerns a situation in which the defendant's responsibility for the condition of his vehicle was not submitted to a jury or in which he was adjudicated to be negligent as a matter of law. From this language the dissent seems to conclude that unless the owner or driver comes forward with evidence of his care, he is *conclusively* presumed to have been negligently responsible for the vehicle's defective condition. While an inference may arise from defendant's silence and from his operation of the vehicle that defendant is legally responsible for the vehicle's defective condition, which inference makes a jury question of defendant's common law responsibility for the vehicle's condition without the necessity of evidence of his actual negligence in its care, the inference is merely a device which takes the case to the jury and is *not conclusive* of his legal responsibility therefor.

■ The dissent fails to appreciate that before it can be decided whether defendant has tendered a sufficient excuse for being on the wrong side of the road, it must be determined whether he is responsible for the defective condition of his vehicle and that that determination is independent of and in no manner affected by the fact that he was on the wrong side of the road. The initial determination of defendant's responsibility for the condition of his vehicle, therefore, has to be one for the jury.

■ The only other assignment of error is the court's giving of an emergency instruction which plaintiffs claim was prejudicial to defendant because his testimony was capable only of the interpretation that *he had no choice* in whether or not his vehicle ended up on the wrong side of the street. Assuming that the instruction was improper, if applied to defendant, the giving of it was not reversible error because plaintiffs did not point out in their exception, which was general

only, the defect of which they now complain. The exception was:

"* * * the plaintiffs except * * * to the giving of the emergency instruction in connection with the proceedings."

In addition, the giving of the emergency instruction was not error because it was applicable to Mrs. Weitzel, the operator of the other vehicle. She was charged with contributory negligence in failing to steer her vehicle in a manner so as to avoid defendant when he appeared suddenly on her side of the street. She was met with a genuine emergency to which the instruction would be applicable. The instruction was given in neutral terms and was not specifically applied to either Mrs. Weitzel or defendant but only to situations in which the facts justified its application. It was applicable to Mrs. Weitzel as she was the only one presented with an emergency where she might not have made "the wisest choice."

The judgment of the trial court is affirmed.

**O'CONNELL, C. J.,** specially concurring.

I specially concur simply to draw attention to the fact that the conflict in views represented by the majority and dissenting opinions stems from the evil of recognizing the doctrine that the violation of a statute is negligence per se. In my specially concurring opinion in *Henthorne v. Hopwood,* et al, 218 Or 336, 339, 338 P2d 373, 345 P2d 249 (1959), and again in my dissent in *McConnell v. Herron,* 240 Or 486, 494, 402 P2d 726 (1965), I stated my reasons for the abolition of the doctrine. In *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972), the court eliminated a part of the objectionable features of the doctrine but retained the basic idea that the violation of a statute is given a special effect in tort cases in the form of creating a presumption of negligence. The retention of this vestige of the doctrine now comes back to haunt us in the present case when it is used by the dissent as the start-

ing point for reasoning that defendant could not get to the jury because his assertion that "something * * * went out from underneath the car" as an explanation for being in plaintiff's lane of traffic was not sufficient to rebut the presumption of negligence created by statute.

As I tried to explain in *McConnell v. Herron, supra,* I do not understand why the violation of the statute should be given this effect. If the violation of the statute is not given any special effect, defendant's explanation for being ·in the plaintiff's lane should be submitted to the jury. It is possible that something did happen underneath the car which caused it to swerve; it is also possible that defendant was lying. This, then, becomes a question of defendant's credibility, a question upon which many cases turn including automobile accident cases. If we demand that defendant produce additional evidence to buttress the credibility of his assertion, or explain why he cannot, we will inject into the law of evidence a new kind of a "best evidence rule" applicable to cases not involving written instruments.

**TONGUE, J.,** dissenting.

I must respectfully dissent for two reasons: (1) defendant did not introduce sufficient evidence, in my opinion, to overcome the presumption of negligence arising from his violation of a motor vehicle statute and (2) the "emergency instruction" had no proper application in this case.

1. *One who claims a vehicle defect as an excuse for the violation of a motor vehicle statute must offer evidence that in driving the defective vehicle on the public highway he was acting reasonably.*

This is the first case since our adoption in *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972), of a new rule for application to cases involving violation of motor vehicle statutes as negligence *per se* that this court has been called upon to apply that rule to a case

in which the statute violated by defendant was a vehicle "operational" statute (driving on wrong side of road) and defendant's excuse for its violation was that his vehicle was defective in some respect *not* proscribed by a vehicle safety equipment statute ("something" underneath the car "started dragging").

In *Barnum v. Williams, supra,* we eliminated the previously recognized distinction between cases involving violations of vehicle "operational" statutes as negligence *per se* and violation of vehicle safety equipment statutes and held that violations of both statutes resulted, in effect, in a presumption of negligence as a matter of law. We also held in *Barnum* that in both classes of cases that presumption could be overcome by the defendant by evidence from which the jury could properly find that despite the violation of the statute he was not negligent, i.e., that his conduct was that of a reasonably prudent person.

Thus, we said in *Barnum* (at 79) that in order to overcome that presumption of negligence resulting from the violation of such a statute *the defendant has "the burden of producing evidence that, nevertheless, he was acting reasonably."* We then went on to say:

> "If the party having such burden produces no evidence of reasonable conduct *or the court finds the evidence produced is insufficient to prove reasonable conduct,* the court must find the party negligent as a matter of law. If the party produced evidence which the court determines raises a question of fact whether the party acted reasonably, despite violation of the statute, then, the question of the party's negligence is for the jury.

> "On occasion it will be difficult to decide whether to submit the issue to the jury. *However, the court's task in such a case is identical to that imposed in the administration of a judicially set standard of conduct in which the court must also decide whether to submit the issue to the jury or find negligence as a matter of law.* \* \* \*" (Emphasis added)

Since *Barnum* we have considered two cases involving vehicles which went out of control because of

[ 195 ]

defective equipment. *Freund v. DeBuse,* 264 Or 447, 506 P2d 491 (1973), involved the failure of brakes, a defect which is the subject of safety equipment statutes (ORS 483.444). No "operational" motor vehicle statute was involved. The defendant's car "rear ended" plaintiff when its brakes failed. We noted (at 451) that there was evidence from which "[t]he jury could find that the defendant had no prior trouble with the brakes except that about three weeks before the collision he adjusted them." There was also testimony that the brake failure was caused by a broken brake drum, from which the brake fluid had leaked. As the basis for holding (at 452) that there was "sufficient evidence to enable the jury to find that the defendant acted as a reasonably prudent person," we said that:

"* * * *When there is no prior warning of any possible* defect in the brakes a reasonable vehicle operator is *not required to 'tear apart' the wheel to inspect for a defect.*" (Emphasis added)

Subsequent to the trial of this case the case of *Harkins v. Doyle,* 271 Or 664, 533 P2d 785 (1975), was decided. It also involved a brake failure, but also involved the violation of an "operational" statute, i.e., going through a "red light" (ORS 483.128). We specifically noted (at 667) that "[d]efendant had experienced no difficulty in using the brakes prior to the accident," and (at 669) that "[d]uring this period [prior to the accident] the brakes operated properly, * * *." We also noted (at 668) that the trial court had given the following instruction:

" 'There has been testimony in this case that Defendant drove his vehicle through a red light at the intersection of Second and Harrison Streets in Corvallis, Oregon, because the brakes of his vehicle failed. *The negligence of the Defendant,* if any, under specifications 4 [operated vehicle with inadequate brakes] and 5 [failure to stop at red traffic signal], *would depend on whether you find that he knew or should have known that the brakes on the said vehicle were in a faulty condition prior to the incident in question.* In other words, Defendant would be negligent only if he failed to act as a reasonably prudent

person under the same or similar circumstances.' " (Emphasis added)

Defendant says in its brief on this appeal that "[t]he result here should be governed by the analysis in *Harkins v. Doyle, supra.*" I agree. In recognition of the vital importance of such evidence in a "vehicle defect" case defendant also says in his brief:

"* * * Evidence of prior operation without difficulty negates any special circumstances that would impose such extraordinary burden on the defendant to establish the particular cause or undetectability of the mechanical failure. (Tr 2-3) * * *"

On the contrary, the only testimony that I can find in the record is a statement by defendant that he "had this car" for "a few months" prior to the accident. There was no evidence whatever relating to the condition of defendant's car prior to the accident, much less whether or not defendant had any previous trouble with it, as in both *Freund* and *Harkins.* Neither was any evidence offered based upon a subsequent examination of the car to describe the nature of any defects found as a basis for explanation why the car suddenly went out of control without prior warning, as in *Harkins.*

In this case defendant's car was an eight-year-old 1967 Chevrolet. It had "oversize" rear tires and a "rebuilt" engine. Defendant worked for his brother in an "auto supply" business. For all we know, this eight-year-old used car may have had "something" that was loose and "hanging down" underneath of which defendant either "knew or should have known" (to paraphrase *Harkins*). Also, for all we know, defendant may have had previous trouble with this old car as the result of such defects. And, for all we know, defendant may have subsequently examined the car and discovered the nature of the defect and the reason why it went out of control.

It follows, in my opinion, that in the absence of at least some evidence relating to the previous condition

of this eight-year-old car and defendant's previous experience in driving it, or to otherwise explain the nature of the defect and why it suddenly went out of control with no previous warning (if such was the fact), there was no evidence sufficient to overcome the presumption of negligence arising from violation by defendant of the "operational" statute in driving over the center line and into the wrong lane of traffic because there was no evidence from which the jury could determine whether in driving this defective vehicle on a public highway the defendant's conduct was that of a reasonably prudent person, as required under the rule adopted by this court in *Barnum.*

The majority appears to misunderstand these contentions. Thus, according to the majority:

"* * * The dissent treats defendant as if he had been operating a vehicle the condition of which was in violation of a statute; it, in effect, places a presumption of negligence upon defendant for the defective condition of his vehicle which becomes conclusive in the absence of his testimony that he took due care of it.

"Because the actual allegation of negligence against defendant concerns his being on the wrong side of the road, which involves the violation of a statute, the dissent, in evaluating his excuse, attaches the same level of responsibility upon defendant for the defective condition of his vehicle as it does to his being on the wrong side of the road, despite the condition of his vehicle not being claimed to have violated a statute. The dissent never explains how the level of legal responsibility for violation of the statute requiring one to stay on his own side of the road transports itself over to his non-statutory common law responsibility for the condition of his vehicle."

Based upon the foregoing analysis, and without the citation of any authority to support it, the majority then asks the following rhetorical question:

" '* * * If a person is not negligent as a matter of law, in the absence of an explanation, for an admitted non-statutory defect in his vehicle when directly charged with such negligence, why does he so become when his

[ 198 ]

responsibility for the defectiveness of his vehicle comes into question as his excuse for being on the wrong side of the road?' It is no answer to say that his being on the wrong side of the road is a violation of a statutory duty. Initially in question is defendant's responsibility for the condition of his vehicle, and it is only after resolving this question that a decision can be made regarding whether his excuse for being on the wrong side of the road is adequate."

The answer to the rhetorical question posed by the majority is that plaintiffs do not contend that in operating a defective vehicle defendant was "negligent as a matter of law." Plaintiffs had no burden to prove such a contention.

The effect of the majority analysis of the problem, by attempting to isolate the problem of "defendant's responsibility for the condition of his vehicle" as a problem to be determined "initially," before considering whether "his excuse for being on the wrong side of the road is adequate," is to place upon plaintiffs the burden of proof that defendant was negligent in operating a defective vehicle. As previously stated, however, that burden is not upon the plaintiffs. Indeed, such an analysis is directly contrary to the analysis of this problem in *Barnum* and to the rule adopted by this court in that case.

Under the rule of *Barnum,* upon proof that defendant was on the wrong side of the road in violation of an operational motor vehicle statute he is presumed to be negligent as a matter of law and *it is then the defendant who has the burden of proof to excuse that violation.* In order to do so defendant has the burden to prove that he was *not negligent* in that his conduct was that of a reasonably prudent person. (See *Barnum v. Williams, supra,* at 79.)

For the defendant to simply say, "My car broke down" or "My brakes failed" (even in the absence of a "brake statute") is not evidence that a defendant who was driving a car with such defects on a public high-

way acted as a reasonably prudent person, so as to sustain the burden of proof imposed upon defendant by the rule of *Barnum* in order to overcome the presumption of negligence arising from the violation of an "operational statute." If anything, the more logical inference from such testimony is that defendant was negligent in driving a defective car on a public highway. At the least, that evidence, to the effect that defendant was driving a defective car, does not support an inference that his conduct in doing so was that of a reasonably prudent person in the absence of some further evidence, such as that defendant had his car inspected regularly or, at the least, that he had not previously had trouble of the kind involved in the failure.

Such a rule is consistent with the general rule, as stated in 2 Blashfield, Automobile Law and Practice 459-60, § 107.3 (1965), as follows:

> "The owner or driver of a motor vehicle owes to himself and to others a duty of inspection. He must exercise reasonable care in this inspection to discover any defects which may prevent the proper operation of the vehicle, and is chargeable with knowledge of any defects which such inspection would disclose."

Such a rule is also consistent with holdings by other courts in cases involving vehicle defects, and without regard to whether or not such defects were of such a nature as to violate vehicle equipment statutes. Thus, in *Ison v. Mullins,* 336 SW2d 599 (Ky App 1960), in which defendant's car also went across the center line and hit plaintiff's car, defendant said, as in this case, that "Something went wrong with my car, and I couldn't control it" and contended that "if something was wrong with the car [he] was not guilty of negligence." That contention was rejected, the court saying (at 601):

> "* * * The fallacy in the argument is that if the defect was known or could have been known to Mullins by use of ordinary care, then the existence of the defect

at the time of the accident would have been *no excuse. * * *"* (Emphasis added)

Similarly, in *Sherman v. Frank,* 63 Cal App 2d 278, 146 P2d 704, 707 (1944), it was held that:

"* * * Merely because the operator is unable to control his automobile on the highway, by reason of defective wheels, tires, or machinery, is *not a complete defense* in the event that he should injure the property or life or limb of another, *He is free from negligence only in the event he may have exercised the care which an ordinarily prudent man would have exercised to maintain his automobile in a reasonably safe running condition.* If he fails to exercise such care and if such failure proximately contributes to the happening of an accident, the operator of the car is liable for such loss as may be suffered by the victim of his negligence. * * *" (Emphasis added)

To the same effect, it was held in *Robinson v. American Home Assurance Company,* 183 So 2d 77, 78, 79 (La App 1966), that:

"As correctly pointed out by defendants, a driver generally is not held to be responsible for latent defects in his car where he exercises reasonable care in having the car inspected. In order for latent defects *to constitute a valid defense,* however, the proof must be so strong as to exclude any other reasonable hypothesis with reference to the cause of the accident except that it resulted solely from the alleged defects, and it must establish that the driver was not aware of the defects and that the defects could not reasonably have been discovered and remedied by a proper inspection. [Citing cases]."[1] (Emphasis added)

The majority says that in those cases the question of defendant's negligence was submitted to the jury. That may be true. Those cases, however, did not involve the violation by the defendant of an "operational statute," as in this case, so as to invoke the rule adopted by this court in *Barnum,* and so as to impose the burden upon the defendant to overcome the resulting presumption of negligence. Instead, the plaintiff

[1]See also 2 Harper and James, The Law of Torts 1007-1011, § 17.6 (1956).

had the burden of proof in those cases. Nevertheless, the rule of law as stated by the courts in such cases is persuasive authority and is consistent with the contention that under the rule of *Barnum* the operator of a defective vehicle who has violated an operational statute, and has the burden of overcoming the resulting presumption of negligence by offering evidence that his conduct in driving the defective car was reasonable, must offer some evidence in addition to the mere fact that his vehicle was defective. As previously noted, the majority has cited no cases or authorities whatever in support of its analysis and conclusions.

Such a rule is also consistent with the rule of law applicable in cases in which the operator of an automobile claims that he went on the wrong side of the road because of a sudden emergency (here, the failure of defective equipment). In such cases defendant has the burden to prove that the "emergency" did not arise because of his own negligence. Thus, again, when the claimed "emergency" was the result of the failure of vehicle equipment, defendant should have the burden to show that the defect was not the result of his negligence in that he neither knew nor had reason to know of the existence of the defect. Indeed, in *Moore v. Siebelt,* 6 Ohio St 2d 115, 216 NE2d 62 (1962), it was held that the court should have instructed the jury that an emergency resulting from the blowout of a tire, causing defendant's car to veer to the left, striking plaintiff's car, could not serve as a legal excuse for the violation of an "operational" motor vehicle statute—and apparently without regard to the question whether defendant knew or should have known that the tire was defective. Cf. *Spalding v. Waxler,* 2 Ohio St 2d 1, 205 NE2d 890 (1965), and *Stump v. Phillians,* 2 Ohio St 2d 209, 207 NE2d 762 (1965).

It also appears to be contended by the majority that the same result should not follow in this case, as in *Freund* and *Harkins,* because those cases involved violations of safety equipment statutes and it was alleged as a specification of negligence that defendant was

negligent in that the brakes of his car were defective, whereas this case does not involve the violation of a safety equipment statute and no vehicle defect was alleged. Instead, it was alleged that defendant was negligent "in driving and operating his vehicle across the center line of said roadway and into the traffic lane occupied by plaintiff," thereby violating a vehicle operational statute.

In my judgment this is a distinction which should make no difference. In all three cases it was alleged that defendant failed to keep his car under control. In all three cases once it is established that defendant violated a vehicle operational statute in that he went through the stop sign or was on the wrong side of the road, defendant has been proved to be negligent *per se,* at least as a matter of presumption. This rule of negligence *per se* arises not from the operation of a vehicle which is defective, whether for brakes or otherwise, but from the operation of the vehicle through the stop sign or on the wrong side of the road.

In such a case, the only remaining question is whether defendant has offered evidence sufficient to overcome the presumption of negligence which arises from going through the stop sign or driving on the wrong side of the road. This is the question presented in this case and it is the same question presented and decided in *Freund* and in *Harkins.* As previously noted, defendant has conceded that this case must be decided by the same analysis as in *Harkins.*

In any event, there was evidence in this case that the brakes of this defendant's car were defective in that they did not satisfy the requirement of ORS 483.444(1) and (4).[2] Defendant testified that after the

---

[2] ORS 483.444 provides as follows:

"(1) Every motor vehicle other than a motorcycle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, *including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels.* If these two separate

"something" dropped out "in back" he tried to stop his car with his brakes, but they did not function. Despite evidence of damage to the rear end when "something" dropped out, there was no claim of damage to the front end of defendant's car. Yet defendant's front wheel brakes failed to operate and thus were defective within the meaning of ORS 483.444 in that they failed to satisfy the requirements of that statute. While this may interject a point not argued by counsel or previously considered by the court, it illustrates the fallacy of the distinction made by the majority.

If, in this case, defendant had only testified, if it were the fact, that he had no previous trouble with his car during the period of its ownership, he would have satisfied his burden to offer evidence that in driving this defective car his conduct was reasonable in that he did not know or could not have reasonably known that the "something" would fall out or that his brakes would fail. In the absence of any such evidence, and for reasons previously stated, I am of the opinion that upon the application of the rule adopted by this court in *Barnum* it necessarily follows that defendant did not offer sufficient evidence to overcome the presumption of negligence as a matter of law arising from his admitted violations of an "operational statute" in driving over the center line and into the wrong lane of traffic.

*The concurring opinion.*

It is contended by the concurring opinion that the violation of motor vehicle statutes should not be given "any special effect" whatever in determining whether

---

means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

"* * * * *

"(4) *All brakes shall be maintained in good working order* and shall conform to the regulations set forth in subsection (5) of this section." (Emphasis added)

[ 204 ]

or not the operator of a motor vehicle is negligent.[3] That contention, as also made by the writer of the concurring opinion in previous dissenting and concurring opinions, was rejected by this court in *Barnum.* In that case, as previously stated, this court held that the violation of a motor vehicle statute creates a presumption of negligence *per se*; that this court has the duty to determine whether evidence offered by a party is sufficient to overcome that presumption; and that this court also had the duty to establish a "judicially set standard of conduct" for application in such cases.

It is most respectfully submitted that although the majority has not directly overruled *Barnum,* it has done no more than pay lip service to it. In my judgment, the majority by its decision in this case has abdicated the responsibility which it specifically undertook in *Barnum* and has, at least in effect, adopted and applied the contention of the concurring opinion to the contrary in that the majority has in this case given no "special effect" to the defendant's admitted violation of a motor vehicle statute by driving over the center line and into the wrong lane of traffic.

It is of interest to note that at the trial of this case defendant's counsel, in successfully resisting plaintiffs' motion, stated that:

"* * * The doctrine of negligence per se is practically gone completely. The Supreme Court, at the time they decided those last two cases, was split pretty well evenly as to whether to completely abandon it now that they had almost completely taken it apart."

It is apparent that the trial court accepted that

---

[3]The concurring opinion also characterizes the rule proposed by this dissent as a new kind of a "best evidence rule" to "buttress credibility." This misstates the purposes of the rule, which is not to require "better" evidence, but to require that the operator of a defective motor vehicle satisfy his burden to produce at least *some* evidence to overcome the presumption of negligence that must otherwise follow from the violation of a motor vehicle statute, when, as in this case, the only excuse given is that defendant's vehicle was defective and no evidence is offered by defendant to show that he did not know or could not reasonably have known of the defect

view. It is also apparent from the decision by the majority that it had adopted the same view.

The rule that violation of a motor vehicle statute at least creates a presumption of negligence as a matter of law, as adopted by this court in *Barnum,* is the prevailing rule on this subject.[4]

In my judgment, there are important reasons of public policy to preserve, rather than emasculate, the vitality of that rule and, as promised by *Barnum,* to implement that rule by the adoption of appropriate "standards of conduct" for application in determining whether offered evidence is sufficient to overcome that presumption in various types of cases. This is particularly important, in my opinion, in cases involving the operation of defective motor vehicles.

In *State Farm Ins. v. Farmers Ins. Exch.,* 238 Or 285, 292, 387 P2d 825, 393 P2d 768 (1964), it was held, quoting from another case, that:

" 'The public policy of this state is to protect as far as possible those injured through the carelessness or negligence of motor vehicle operators who make use of its highways. * * *.' "

That recognition of the public policy of Oregon was restated by this court in *Bailey v. Universal Underwriters Ins.,* 258 Or 201, 223, 474 P2d 746, 482 P2d 158 (1971), and again in *State Farm Fire v. Sevier,* 272 Or 278, 296, 537 P2d 88 (1975).

In my view, both the majority opinion and the concurring opinion in this case are inconsistent with the public policy of Oregon to protect victims of motor vehicle accidents, as previously recognized by this court.

The writer of an exhaustive discussion of the subject of liability for injuries caused by defective motor vehicles, in discussing the problems of a plaintiff injured in such an accident who undertakes to allege

---

[4]See 2 Harper and James, supra n. 1, 997, § 17.6. See also Annot., 40 ALR3d 9, 40-44 (1971).

and prove the negligence of the defendant in such a case, has quite correctly observed that:

"* * * Proving that the accident was caused by some form of equipment failure is often an easy task for the plaintiff: The failure is typically raised in defense because the great majority of equipment failure cases involve accidents in which the bystander appears not negligent and the operator of the failing vehicle appears negligent. The failure of the equipment will be shown by the defendant to rebut what appears to be negligent operation of the vehicle. *Plaintiff's problems of proof arise because he must prove that whatever defect caused the failure should have been discovered by due care in inspection and maintenance and that the failure of the equipment was caused by defendant's failure to meet his duty of care.* Proving that the equipment failure was caused by a discoverable defect requires the plaintiff to pinpoint the exact nature of the defect involved. A brake failure caused by worn brake linings is clearly preventable by ordinary inspection. A failure caused by metal fatigue causing a hydraulic brake line to crack or break is just as clearly not preventable by ordinary inspection. Pinpointing the specific defect is a difficult task for several reasons. The vehicle may be so damaged that it is impossible to determine the precise cause of failure. Subsequent repairs may hide the original defect. Information as to the nature of the defect and the condition of the vehicle itself after the accident will normally be solely in defendant's hands. Moreover, in many instances in which detailed investigation can be made it is simply impossible to determine whether the failure was caused by something that could have been prevented by careful maintenance.

"In order to prove that the defendant did not exercise due care in inspection and maintenance, the plaintiff must trace defendant's conduct for months before the accident, rather than merely recreate the events immediately prior to the accident as is necessary in cases based on operator—as opposed to mechanical—failure. * * *."[5] (Emphasis added)

The writer of that discussion proposes as a remedy

---

[5] Note, Nonfault Liability for Vehicle Equipment Failures, 23 Stanford L Rev 1112, 1120-122 (1971).

the adoption of a theory of liability in such cases similar to that of enterprise liability. Such a drastic remedy, however, is not necessary to meet the problem presented in a case such as this for two reasons: (1) in this case the driver of the vehicle violated an operational motor vehicle statute, giving rise to a presumption of negligence, and (2) it is not the plaintiffs in this case who seek to prove that the automobile was defective, but it is the defendant who seeks to excuse that violation and to overcome the resulting presumption of negligence by claiming that his vehicle was defective, and in some manner not covered by a motor vehicle equipment statute.

Even if no violation of a statute was involved and even if it was the plaintiffs rather than the defendant who sought to prove that defendant's car was defective, it would not be unreasonable in such a case to do as this court has done in *res ipsa* cases by placing upon the operator of the automobile—the one who has had its exclusive control—the burden to come forward with evidence sufficient to show that he did not know and could not reasonably have known of the defect—at least by evidence that he had no previous trouble with his car.[6] Is it not all the more reasonable to apply the same rule in this case, in which the defendant admits the violation of an operational statute and in which it is the defendant who seeks to prove as an excuse for that violation that the car under his control was defective?

For the foregoing reasons, including the all-important reason of public policy to protect persons injured by defective motor vehicles, I am of the firm belief that this court should reaffirm, not emasculate, the rule so recently adopted in *Barnum*; that the application of that rule to the facts of this case requires that this court hold that the judgment in this case be reversed and that it be remanded for a new trial in which the rule of *Barnum* is properly applied by the trial court.

---

[6] Cf. *Pattle v. Wildish Construction Co.*, 270 Or 792, 529 P2d 924 (1974).

2. *It was "clear error" to give an "emergency instruc-
tion" in a case in which defendant's car was on the
wrong side of the road because of a claimed vehicle
defect which caused it to go completely out of control.*

The trial court gave the following instruction:

"I instruct you that a person who is placed in a posi-
tion of peril suddenly through no negligence of his own
and compelled to act without an opportunity for reflec-
tion is not guilty of negligence *if he makes such a choice*
as a reasonably prudent and careful person placed in
such a position might make, *even though he does not
make the wisest choice.*" (Emphasis added)

In *Frangos v. Edmunds,* 179 Or 577, 173 P2d 596
(1946), this court (at 607) stated the conditions under
which an emergency instruction may properly be
given, as follows:

"* * * When a driver finds himself confronted by an
emergency constituting an imminent and impending
danger *and alternative means of escape from collision
are presented* so that it becomes a matter of judgment as
to what course to follow, he will not be liable for a mis-
take in judgment if he acted with such care and prudence
as a reasonable person would exercise in such an
emergency. This is true even though the choice he makes
is not such as a reasonable person with ample opportun-
ity for deliberation would make. The rule is always sub-
ject to the limitation that a person cannot avail himself
of the emergency doctrine if the emergency arose by
reason of his own negligence. A review of our decisions
will disclose that *the emergency doctrine ordinarily
applies only when the evidence discloses that alternative
action is possible and that quick judgment is required*
[citing cases]." (Emphasis added)

It is clear from defendant's testimony that he made
no choice of a course of alternative action. He testified
that:

"* * * the only thing I could do is I went to the right,
hit the curb in the right-hand lane and went across the
road in front of an oncoming car, which was the plain-
tiffs. All I could do was hold on and ride it out."

There was no evidence that defendant had any

alternative course of action. It follows that the emergency doctrine was not applicable under the facts of this case and that the trial court erred in giving that instruction.

Defendant apparently recognizes that what the majority characterizes as a "general" exception was sufficient to raise an elementary question whether or not it was error to give an emergency instruction in a case in which a defendant had no "alternative course of action." Defendant seemingly concedes that it would be error to give that instruction in such a case and contends only that there was testimony of an "alternative course of action" in that on cross-examination plaintiffs' attorney "attempted to establish [defendant's] failure to steer or control his car in a direction other than in the path of the oncoming vehicle. (Tr 14)" Upon examining the record, I am unable to find that defendant gave any testimony from which a jury could properly find that he had any "alternative course of action."[7]

Defendant also contends that "the form of the instruction given related to 'a person' and was applicable to both plaintiff driver and defendant." Plaintiffs,

_____

[7]That portion of the record referred to by defendant is as follows:

"Q   Well, do you recall when your deposition was taken in Mr. Luvaas's office, about a week or two ago, at which time—page 16—at which time the question was asked, 'Was your car skidding?'

'Answer:   I tried to put on the brakes and I don't remember getting any brakes out of it. I don't know, I just—I just hung onto the steering wheel and stomped on the brakes and I don't remember whether I got any brakes or not.'

"Do you remember that answer?

"A   Yes, sir.

"Q   Did you just hang on the steering wheel or did you attempt to steer—

"A   While I was hanging on, I was attempting to steer at the same time. I was trying to steer it and still hang on at the same time.

"Q   Well, is it your version that you couldn't turn, that the wheels would not turn?

"A   They wouldn't. They wouldn't respond very well, because what was dragging underneath was more or less directing the car. I was trying to steer and hang on to the steering wheel at the same time and ride it out, and, as I recall, I couldn't get any response to any particular direction it was going to go."

[ 210 ]

however, objected to the instruction and, in the broad context of the testimony in this case, it is my opinion that the giving of that instruction made it clear to the jury that the instruction was intended to apply to defendant.

The majority holds that the giving of that instruction was not error because plaintiffs' exception was general only and did not point out the defect of which plaintiffs now complain. No such contention was made by defendant.

It may be proper to affirm a judgment after a trial in which an improper instruction was given to which no proper exception was taken, regardless of whether or not such a contention is made by the respondent. In my opinion, however, such a result is not proper in this case because the giving of the "emergency instruction" in this case was an "error of law [so] apparent on the face of the record" with the result that this court should take notice of it under the terms of Rule 6.18 of the Rules of Procedure of this court.

We have said on a number of occasions in recent years that the emergency instruction is an instruction that "is unnecessary to give and should be avoided." See *Ballard v. Rickabaugh Orchards, Inc.,* 259 Or 200, 207, 485 P2d 1080 (1971). See also *Jones v. Mitchell Bros.,* 266 Or 513, 526-27, 511 P2d 347, 514 P2d 350 (1973); *Rankin v. White,* 258 Or 252, 256, 482 P2d 530 (1971); and *Evans v. General Telephone,* 257 Or 460, 466-67, 479 P2d 747 (1971). The vice of the emergency instruction is that it gives a party (whether plaintiff or defendant) a "double shot" on the issue of whether his conduct was such, considering all of the circumstances, as to satisfy his duty to exercise reasonable care. As we said in *Evans v. General Telephone, supra* (at 467), "* * * the usual instruction on negligence sufficiently covers what a reasonably prudent person would do under all circumstances, including those of sudden emergency." To the same effect, see *Jones v. Mitchell Bros., supra* at 527.

As yet, we have apparently not reversed a trial court for the giving of the emergency instructions *in cases in which the facts were such as to present an alternative course of action.* In my opinion, however, to affirm the giving of the emergency instruction in this case, in which *defendant himself testified that he had no alternative course of action,* is to make a mockery of our previous holdings to the effect that the giving of that instruction is improper in any case, as well as our previous holdings that an emergency instruction is improper unless the defendant has some "alternative course of action"—the well established rule since *Frangos v. Edmunds, supra.* In my view, we should either enforce the rules that we have stated or overrule those cases.

For all of these reasons, I dissent.

McALLISTER and HOWELL, JJ, join in this dissent.